Roy V. Sample *vs.* City of Melrose.

Frederick A. Sample *vs.* Same.

Middlesex. May 5, 1942. — September 8, 1942.

Present: Field, C.J., Donahue, Qua, Dolan, & Cox, JJ.

*Negligence,* Trench, Use of way. *Proximate Cause.*

A finding of negligence causing the fall of a four year old child into an excavation made by the defendant's employees in a private way adjacent to the child's house was warranted by evidence that the employees did not guard the excavation nor give warning thereof to the child's custodian in the house, that the excavation was out of view of the custodian, and that the employees knew that small children were playing in yards adjoining the excavation.

Two actions of tort. Writs in the Superior Court dated August 11, 1939.

The actions were tried before *Greenhalge,* J. There were verdicts for the plaintiffs. The defendant alleged exceptions.

*H. E. Cryan*, City Solicitor, for the defendant, submitted a brief.

*J. J. Whittlesey*, for the plaintiffs.

QUA, J. The first action is by a child to recover for personal injuries sustained on July 11, 1939, when, being four years of age, he fell into an excavation made by the defendant's water department in a driveway "on private premises" where this plaintiff (hereinafter called the plaintiff) resided with his parents. The second action is by the plaintiff's father for consequential damages. Both actions are based upon alleged negligence in failing properly to guard the excavation and to warn of its existence. In each case the defendant excepts to the denial of its motion for a directed verdict in its favor.

There was evidence tending to show these facts: The driveway was located on the premises occupied by the plaintiff and his family, but one Meuse and his wife, the owners of the land next adjoining on the north, used it "by virtue of" a grant in the deed of their land of the "right to use . . . the driveway" in common with the grantor and others. The northerly line of the driveway ran parallel with and about two feet distant from a stone retaining wall on the southerly line of the Meuse lot, which was somewhat higher than the Sample lot. The wall was from four to five feet high next the street but tapered to a height of about two feet at its end farther from the street. The surface of the driveway was of "dirt." On the day before the accident the defendant's foreman had called at the Meuse home to investigate a complaint received from there of a leak in the water supply of the Meuse house. At about 7:30 on the morning of the accident the defendant's employees began using a pneumatic drill upon the pavement of the street about opposite the driveway. About an hour later an employee of the defendant began digging with a pick and shovel in the driveway in order to expose the pipe which had been laid beneath the driveway to serve the Meuse house. By what right the pipe had been laid does not appear, unless the "right to use" the driveway included the right to lay a pipe there. No notice was given

to the owner or to any occupant of the Sample premises that any work was contemplated or was being done in the driveway, "and there is no evidence that any of the occupants of the Sample house, except the minor plaintiff, was aware at any time prior to the accident that an excavation or other work was contemplated or being performed there." The plaintiff's father left his house at about 7:30, before any work was done in the driveway. He had had no trouble with his water service and had not notified the defendant that any repairs were required. By "express arrangement" between the plaintiff's father and Meuse the plaintiff always played with the Meuse children in the yards of the two adjoining premises. On the morning of the accident the plaintiff's mother was ironing in her kitchen, which has two windows facing their yard and the Meuse yard. The plaintiff was in and out, running and playing with the other children in the yards of both properties. His mother could see that he was there, although she did not watch him every second. He was not allowed to play outside of the yards and never went outside. The mother could not see the end of the driveway nearer the street and did not know that any work was being done in the driveway. The excavation in the driveway was next to the street and was about five feet long, four feet deep and three feet wide. There was evidence that the earth was thrown up on the ground all around it to the depth of a foot or more and that this earth formed a sloping embankment from the top of the retaining wall to the side of the excavation and "was adapted to precipitate an object falling on the embankment into the pit," and that at about 11:45 A.M. the plaintiff fell into the excavation from the side where this embankment was, and struck on his head. There was evidence that less than five minutes before the plaintiff fell small children were seen playing on the lawn of the Meuse property, that at that time there was no one in or about the excavation, although there were some men near a truck in the street, and that there was no protection and there were no barriers around the excavation, "only out in the street." The employee of the defendant who had been

digging in the driveway testified that he saw the plaintiff
and another child playing around there that morning about
ten o'clock and had warned the plaintiff to keep away
"because we was afraid they might get hurt there," and
that he did not see the plaintiff again until the accident
occurred.  A hospital record, which was apparently ad-
mitted without objection, and which might or might not
have been believed, contained a statement that the plaintiff
"is said to have been playing and was pushed in a six foot
hole."

We are of opinion that the judge could not rightly have
ruled that there was no evidence of causal negligence on the
part of the defendant.  It may be that if the defendant had
been requested by the owner or occupant to excavate where
it did there would be difficulty in discovering any evidence
of negligence merely in the manner in which the work was
done.  It may not always be practicable while the digging is
still in progress to provide guards adequate to prevent a
small child from falling into an excavation like that de-
scribed.  It may be that under ordinary circumstances the
appearance of the place, at least in the daytime, would be
sufficient warning to an adult or to a child capable of some
degree of self care, and that children not so capable, when
allowed upon a public street or away from home, may be
expected to be accompanied by a competent custodian.
See, for example, *Compton* v. *Revere,* 179 Mass. 413; *Chap-
man* v. *Boston,* 252 Mass. 404; *Pratt* v. *Peabody,* 281 Mass.
437, 440; *Flynn* v. *Cities Service Refining Co.* 306 Mass. 302,
304.  But this case presents the peculiar feature that the
jury could find that the defendant dug a deep pit upon
private land without the knowledge of the owner or occu-
pant.  The jury were not obliged to believe the evidence
that the plaintiff himself had been warned away.  The de-
fendant must be held to have known that children too young
to exercise care for themselves with respect to dangers that
would be apparent to their elders might live and play upon
the premises.  The plaintiff was of an age at which the jury
might find it safe and proper for him to run and play with
the neighbor's children in the two adjoining yards when

nothing out of the ordinary was going on there, but the jury might find it unsafe for so young a child to run about in the vicinity of a deep pit newly dug and so placed as to be almost under a retaining wall, with no more supervision than his custodian, occupied with household duties as the custodian of a child might be expected to be, could commonly give to him. See *Lynch* v. *Smith*, 104 Mass. 52, 56; *Sullivan* v. *Boston Elevated Railway*, 192 Mass. 37, 43, 44; *Clark* v. *Martin*, 261 Mass. 60, 63; *Miller* v. *Flash Chemical Co.* 230 Mass. 419, 421; *Minsk* v. *Pitaro*, 284 Mass. 109, 112; *McKenna* v. *Andreassi*, 292 Mass. 213, 219; *Friedman* v. *Berthiaume*, 303 Mass. 159, 163, 164. The jury could therefore find that the defendant had created, without warning to those who should have been informed, an unusual and unexpected hazard the danger of which it might have anticipated, and that the plaintiff fell a victim to that hazard. They could find that reasonable care required the defendant either to notify the owner or occupant of the house in order that proper precautions might be taken to restrain children, or itself to provide more effective, even if unusual, safeguards for the protection of children too young to exercise the necessary care for themselves who might be playing in their own yards. Indeed, it could be found that the defendant's employees knew small children were in fact playing in the vicinity of the excavation. We think it within the province of the jury to make the further findings that if the defendant had given warning or had fully guarded the pit the plaintiff would not have been exposed to the risk, and that the fall into the pit was the substantial cause of his injury. It does not seem to us necessary for the plaintiff to prove precisely what act or movement of himself or of his playmates immediately preceded his fall.

We have dealt with the case as it is presented to us as one of negligence and have not considered whether the defendant might have been found to be liable as a trespasser upon land in the possession of the plaintiff's father. See Am. Law Inst. Restatement: Torts, § 380.

In each case the entry will be

*Exceptions overruled.*