Harold HOBART, Defendant, Appellant,

v.

Michael P. O'BRIEN, Plaintiff, Appellee.

Harold M. HOBART, Plaintiff, Appellant,

v.

John G. DONOVAN et al., Defendants, Appellees.

Nos. 5172, 5173.

United States Court of Appeals
First Circuit.

April 22, 1957.

Thomas H. Mahony, Joseph G. Bryer, Boston, Mass., on the brief, for Harold Hobart, appellant in No. 5172.

Michael Prendergast, Reuben Nitkin, Boston, Mass., on the brief, for Michael P. O'Brien, appellee in No. 5172.

Philip B. Buzzell, Charles M. Ewing and Hemenway & Barnes, Boston, Mass., on the brief, for Harold Hobart, appellant in No. 5173.

Philander S. Ratzkoff, Robert N. Daley and Parker, Coulter, Daley & White, Boston, Mass., on the brief, for John G. Donovan and others, appellees in No. 5173.

Before WOODBURY and HARTIGAN, Circuit Judges, and FORD, District Judge.

HARTIGAN, Circuit Judge.

These appeals are from final judgments based upon jury verdicts in personal injury actions, entered in the United States District Court for the District of Massachusetts on December 13, 1955, one (No. 5172) ordering that plaintiff-appellee, Michael P. O'Brien, recover of the defendant-appellant, Harold M. Hobart, in the sum of $61,000 with interest thereon from June 26, 1952 totalling $12,677.83, and the other (No. 5173) denying the claim for recovery of plaintiff-appellant, Harold M. Hobart against defendants-appellees John G. Donovan and Michael P. O'Brien. Subsequent to judgment a remittitur of $13,000 was made by appellee O'Brien in accordance with an order of the court.

The litigation arose out of a collision of a tank truck owned by appellee John G. Donovan, d.b.a. the Utility Oil Co., and driven by his employee, appellee O'Brien, and an automobile owned by Irma B. Hobart and driven by her husband, appellant Hobart, on Route 2 in Concord, Massachusetts, on June 21, 1952. Jurisdiction was based upon diversity of citizenship.

By a complaint filed June 26, 1952 appellee O'Brien alleged that appellant Hobart negligently drove a motor vehicle so that it collided with the motor vehicle being operated by O'Brien. In a complaint filed May 8, 1953 appellant Hobart alleged that appellee Donovan and his employee, appellee O'Brien, negligently drove a motor vehicle on the aforementioned public highway against Hobart who was then driving on said

highway. The two actions were consolidated for trial.

In seeking reversal of the judgment entered for appellee O'Brien, Hobart, as defendant-appellant, asserts that the trial court erred in refusing to grant (1) his motion for summary judgment, (2) his motion for directed verdict and (3) his motion for judgment n.o.v. or a new trial. In addition, Hobart assigns as error certain rulings of the trial court on evidence, excessive damages and the allowance of interest from the date of the writ.

In seeking reversal of the judgment denying his claim for recovery, Hobart, as plaintiff-appellant, asserts that the trial court erred in refusing to grant his motion for new trial and assigns as error certain rulings of the trial court on evidence. Since the two appeals to some extent turn on similar issues, we shall treat them both in this opinion.

The record shows that in the early afternoon of June 21, 1952 Hobart was traveling west on a section of Route 2 that was comprised of three lanes. As he approached the town line between Concord and Acton, approximately one quarter of a mile east of the scene of the accident, he observed indications of construction going on and found the northern lane obstructed by warning signs, dirt, materials and equipment. By reason of these obstructions he went into the middle lane. Traveling behind him some fifty feet was an automobile driven by Robert Whitney, a witness at the trial.

O'Brien, driving a tank truck in the course of his duty as an employee of Donovan, was traveling east in the southern lane of this highway. As Hobart and O'Brien approached and went to pass each other their vehicles collided. The truck and automobile, as a result of the collision, ended up against a guard rail on the northern lane, Hobart's car facing south and the truck facing northeast.

Hobart, in describing the accident, testified that he was traveling 25–30 miles an hour, that he at all times remained in the center lane and that when the O'Brien truck was four or five car lengths away it left the southern lane and came into the center lane at an angle, colliding with his automobile. At one point in the trial Hobart said it was the truck's right bumper that hit his left front bumper. Later he changed this testimony, stating that it was the left front side of the truck that collided with the left front side of his automobile. Irma B. Hobart, the appellant's wife, who was riding in the automobile with him gave the same general description, except that she testified specifically that the left front of the truck hit the left front of the Hobart automobile.

O'Brien, on the other hand, testified that he was traveling approximately 25 miles an hour, that he was on the "right side" of the road and that the Hobart car came towards him, hitting the left front side of his truck. He further testified that the force of the collision pulled the wheel out of his hands and "swung the truck completely around," throwing him to the right side of the cab.

On cross-examination O'Brien testified as follows:

"X-Q. You have said, at one time, have you not, that the Hobart car was in its right lane, in the center lane, have you not? A. I said the right lane.

"X-Q. Was it in its right lane? A. Yes, that's right.

"X-Q. And that, at the time of the collision? A. No, not at the time of the collision."

Joseph Mullaney, a co-employee of O'Brien who was riding with him in the truck, testified that he was looking out the window to his right and did not see the Hobart automobile prior to the moment of impact. But he did state that "there was a crash" and the truck swerved to the left, throwing O'Brien on his lap.

Whitney, who was traveling some distance behind Hobart, on direct examination stated that Hobart was driving in the center lane at the time of the collision and that the O'Brien truck, travel-

ing with the two left wheels in the center lane, drove into the Hobart automobile. However, on cross-examination he stated that the Hobart automobile turned to the left immediately prior to the accident, and that the collision occurred as it was turning.

Whitney's wife, who was riding with her husband, testified on direct examination that the O'Brien truck came into the center lane and hit the Hobart automobile, but, on cross-examination, she could not say whether the Hobart automobile turned or did not turn to the left at any time.

In addition to these eye-witnesses there was testimony from three state police officers who testified and submitted photographs as to the location and condition of the vehicles immediately following the accident and as to statements made by the parties at that time; the superintendent of the Concord Water and Sewer Department who described the nature of the construction and obstructions on the highway on that date; and an array of medical witnesses.

The rulings of the trial court and the evidence will be further developed in discussing the errors asserted by the appellant, which we now proceed to consider.

Mass.Ann.Laws, c. 152, § 15 (1949), in pertinent part, provides:

" * * * Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the insurer for compensation under this chapter, but, except as hereinafter provided, not against both. If compensation be paid under this chapter, the insurer may enforce in the name of the employee or in its own name and for its own benefit, the liability of such other person, and if, in any case where the employee has claimed or received compensation within six months of the injury, the insurer does not proceed to enforce such liability within a period of nine months after said injury, the employee may so proceed. * * * An employee shall not be held to have exercised his option under this section to proceed at law if, at any time prior to trial of an action at law brought by him against such other person, he shall after notice to the insurer discontinue such action, provided that upon payment of compensation following such discontinuance the insurer shall not have lost its right to enforce the liability of such other person as hereinbefore provided. * * * * "

O'Brien, after filing his complaint on June 26, 1952, entered into an agreement on August 8, 1952 with his employer's insurer whereby the insurer agreed to pay him the benefits provided by the Massachusetts Workmen's Compensation Act for the injuries received in the accident. Accordingly, O'Brien received weekly payments, effective retroactively to June 23, 1952, until July 21, 1954 when his case was closed under a lump sum payment. It was stated to the district judge at trial that upon O'Brien's agreement to receive workmen's compensation benefits, a duly authorized agent of the insurer "stated that he then wanted Mr. Nitkin [O'Brien's counsel] to understand that they were to be subrogated to the O'Brien case, which was then pending in the Federal Court and that he then wanted Mr. Nitkin to handle the case from then on behalf of [the insurer] and as their attorney and that in due course if and when any moneys were received as a result of the case * * * the moneys were to be divided in accordance with Chapter 152, Massachusetts General Laws." It was further stated by an officer of the insurer "that no further actions of any kind or nature by way of new suits or new claims or other types of legal proceedings other than whatever may be necessary by way of appealing this case [will be taken by the insurer] against Dr. Hobart or against Mrs. Hobart."

Hobart unsuccessfully moved for summary judgment on October 13, 1954, claiming that under § 15 the insurer could not take over the action instituted by O'Brien. He contends in this connection that under § 15 O'Brien, upon agreeing to receive compensation benefits, had to discontinue his action, that for a period of nine months after the injury the right to bring the cause of action rested in the insurer, and that O'Brien could commence the action again only if the insurer had not brought suit within the nine month period. If Hobart were to prevail in his argument that the insurer had no right to take over this action by agreement, but, rather, could only institute an action after discontinuance by O'Brien, he can escape liability altogether since the one year statute of limitations has run on the original cause of action. See Broderick's Case, 1946, 320 Mass. 149, 67 N.E.2d 897.

 Initially we note that "Section 15 should be construed liberally to accomplish the purposes for which it was enacted." Furlong v. Cronan, 1940, 305 Mass. 464, 468, 26 N.E.2d 382, 385. Accordingly, it seems to us that the provision that an employee, in electing to receive compensation benefits, must discontinue prior to trial any action at law for the same injury, was not intended to aid the third party in escaping liability; rather, it was inserted to preserve the insurer's right of action against that third party. Here the insurer could have brought, at the time O'Brien agreed to take compensation benefits, a new action against the third party, Hobart, since the statute of limitations had not run, as it had in Broderick's Case; instead it agreed to take over the action already commenced by O'Brien. By such agreement the insurer efficiently pursued its right of action under the statute with no prejudice resulting to Hobart.

However, Hobart would have us construe § 15 as requiring the discontinuance of the action initially brought by O'Brien, as a condition precedent to recovery from him, the third party wrongdoer. We reject this narrow construction for we believe that whether or not the insurer compelled O'Brien to comply with the formality of discontinuance, as it had a right to do under the statute, is not a matter that should work to the advantage of Hobart in any way. As was said in Becker v. Eastern Massachusetts St. Ry. Co., 1932, 279 Mass. 435, 441, 442, 181 N.E. 757, 759, 760:

"The legal liability of a third person for an injury suffered by an employee is not created by the Workmen's Compensation Law and is not discharged by the employee's election to proceed against the insurer for compensation. The statute merely makes a transfer to the insurer of the employee's right to enforce such liability effective upon such insurer's paying compensation to the employee. The insurer, after such transfer, becomes, in substance, an assignee of the employee's cause of action. * * * As in the ordinary case of an action at law brought in the name of an assignor of a cause of action, it is immaterial to the defendant whether the plaintiff is the real party in interest or a nominal plaintiff suing for the benefit of another. * * *

"The defendant's only justifiable interest in the question whether the plaintiff is a nominal or real party is in being protected against double liability and not being required to defend an action prosecuted without authority. * * *"

The statements of O'Brien's counsel in open court, set forth above, and the concurrence therein by the insurer enabled the trial judge to see that Hobart was protected against double liability and that his rights were not prejudiced in any way. Becker v. Eastern Massachusetts St. Ry. Co., supra. Moreover, the trial judge was the one to hear and determine the question of the authority of the insurer to prosecute an action at law in the name of the employee. In re Nealon's Petition, Mass. 1956, 134 N.E.2d 886; Becker v. Eastern Massachusetts St. Ry. Co., supra.

Since Hobart was not prejudiced by the insurer taking over O'Brien's cause of action, the trial judge properly allowed the insurer to continue the prosecution of the instant case notwithstanding that O'Brien had not discontinued his action. None of the cases cited by Hobart in support of his argument present the exact problem before us, and we do not read anything in them that directly opposes our holding.

Next, Hobart contends it was error for the trial court to deny his motions for directed verdict and for judgment n.o.v. on the grounds that the evidence either failed to show negligence chargeable to him or that it showed contributory negligence as a matter of law, chargeable to O'Brien. He cannot prevail in this contention.

The principles which govern the consideration of motions for directed verdicts and judgments n.o.v. filed by defendants are stated in American Fidelity & Casualty Co. v. Drexler, 5 Cir., 1955, 220 F.2d 930, 932, 933:

> "* * * In determining whether or not the evidence in a given case is sufficient to take the case to the jury over a motion for directed verdict, the evidence must be viewed in the light most favorable to the plaintiff, giving the plaintiff the benefit of every inference favorable to him which may be fairly drawn. It is not for the court to weigh the conflicting evidence or to judge the credibility of witnesses. Whenever the evidence is such that fair-minded men may draw different inferences therefrom, and reasonably disagree as to what the verdict should be, the matter is one for the jury. 'And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.' Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916."

Applying these principles, it is apparent, we believe, from the mere summary of the testimony of the eyewitnesses, set forth above, that there was evidence in this case which would warrant a finding for the appellees. To the extent that there was conflicting evidence, the value of which depended on the credibility of the various witnesses, it presented a question for the jury. Collins v. Neal, 7 Cir., 1955, 219 F.2d 238. In this respect, Hobart's confusion in describing the collision may have worked against him in the minds of the jury.

The jury could have found from the evidence that O'Brien at all times remained on the right side of the road and that Hobart turned to the left, thus causing the collision. This finding would be supported by O'Brien's testimony as well as portions of Whitney's testimony on cross-examination. Similarly, on the issue of contributory negligence the jury could have believed O'Brien's testimony that he was on the proper side of the road and in control of his vehicle. See Merchants Motor Freight v. Downing, 8 Cir., 1955, 227 F.2d 247. Nor do we believe that the pictures of tire marks and positions of the vehicles after the accident constitute physical facts which flatly contradict and therefore nullify the oral testimony. Collins v. Neal, supra.

Hobart, both as defendant and plaintiff, also moved for a new trial on the ground, among others, that the verdicts were against the law and evidence. Our views presented above insofar as pertinent apply equally well to these motions. In addition, we wish to state that "[a] motion for new trial is addressed to the sound judicial discretion of the trial court and the action taken thereon is not open to review on appeal unless it appears that there was an abuse of such discretion." Thiringer v. Barlow, 10 Cir., 1953, 205 F.2d 476, 478. There was no abuse of discretion in the denial of the motions in these cases.

Another ground for Hobart's motion for a new trial in these cases was that the verdict was influenced by

wholly improper argument of appellees' counsel. In pursuing this contention on appeal, Hobart largely points to statements made by O'Brien's counsel in his summation to the jury and in a few instances to statements made by appellees' counsel during the course of the trial. Without conceding that the remarks in question exceeded the bounds of propriety, we believe that Hobart cannot resort to them on appeal due to his failure to take timely objections to any of these statements at trial. See Louisiana & Arkansas Ry. Co. v. Johnson, 5 Cir., 1954, 214 F.2d 290, certiorari denied 1954, 348 U.S. 875, 75 S.Ct. 111, 99 L.Ed. 688. In the absence of such objections the remarks of appellees' counsel are not available to him as grounds for reversal. Furthermore, it should be stated herein that during the trial the judge on his own initiative was quick to instruct the jury on occasion to disregard certain remarks of counsel for both sides.

Now we consider the rulings of evidence by the trial court which Hobart assigns as error. To a great extent these rulings are pertinent to both cases on appeal and we do not think it necessary to designate the particular relevance of each ruling.

Since the rulings generally deal with the admissibility or inadmissibility of particular items of proof, it is advisable to point out that Fed.Rules Civ. Proc., rule 43(a), 28 U.S.C. provides in pertinent part:

"* * * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. * * *"

First, Hobart asserts that it was error for the trial court not to allow him to present on cross-examination of O'Brien the complete details concerning statements made by O'Brien in a criminal proceeding in Concord District Court shortly after the accident.

On August 14, 1952 O'Brien had testified in Concord District Court that he did not see the Hobart automobile in sufficient time to tell whether it was in his lane or in its own lane. At the trial of the instant case his testimony, as outlined earlier in this opinion, was to some extent inconsistent. For obvious reasons Hobart sought to confront O'Brien with this testimony on cross-examination.

The trial judge, after first refusing to allow in evidence anything concerning the August 14 testimony, later changed his mind and ruled that any statements made by O'Brien on that date could come in; further, he ruled that Hobart could identify the testimony by referring to the date when it was given and that it was made under oath and pains and penalties of perjury. However, he would not permit Hobart to state that it was made in the Concord District Court. Later, counsel for O'Brien conceded that Hobart could refer to "Concord" as the place where O'Brien gave the testimony.

The trial court's exclusion of the term "District Court" was based on the fact that since the ultimate disposition of the criminal proceeding in the Concord District Court "did not constitute a record of conviction that would be admissible" in the instant trial it would be prejudicial error to allow the jury to learn of the criminal proceeding.[1] In this connection he feared that the jury, upon learning that the testimony was given in the Concord District Court,

---

1. The inadmissibility of the ultimate finding of the Concord District Court and of the fact that there was a criminal proceeding was conceded by all counsel at the trial.

might infer that O'Brien was involved in a criminal proceeding in that court. If the term "District Court" would result in such an inference, it is apparent that Hobart by indirection would be presenting to the jury a fact that could not otherwise be shown.

Upon the trial court's exclusion of the term "District Court", Hobart objected and, for reasons we cannot understand, refused to confront O'Brien with any portion of the Concord District Court testimony. Of course, his choice "to risk all" on this point cannot aid him on appeal. He has waived his right to confront O'Brien with an allegedly contradictory statement, as limited by the trial judge, and the issue before us is merely the one of whether the trial court's exclusion of "District Court" in these circumstances constitutes prejudicial error.

To support his argument Hobart cites many cases for the proposition that a trial court is under no obligation to protect a witness from being discredited on cross-examination, e.g. Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. We think that this rule exists only as conditioned by the well established principle that the limits of cross-examination rest in the sound judicial discretion and control of the trial judge. See United States v. Lawinski, 7 Cir., 1952, 195 F.2d 1; Davis v. Hotels Statler Co., 1951, 327 Mass. 28, 97 N.E.2d 187.

The trial judge's cautious exercise of discretion in this matter is understandable in light of the aforementioned rule that if evidence, which tends to show that a party has been exposed to a criminal prosecution as a result of a motor vehicle accident, is erroneously admitted in a civil action arising out of the same accident under circumstances where there was no "conviction" which can be shown as a matter of record, such error is prejudicial and not cured by a statement in the charge instructing the jury to disregard the fact of the criminal prosecution. See Karasek v. Bockus, 1936, 293 Mass. 371, 199 N.E. 726.

Although we are not convinced that the jury necessarily would have inferred from the term "District Court" that O'Brien was involved in a criminal proceeding, upon weighing the interests in conflict here—the possibility of prejudice to O'Brien as opposed to the evidentiary value to Hobart—we cannot say that the trial court abused its discretion in excluding the term "District Court." Neither do we believe, in light of the record, that this exclusion constituted prejudicial error since Hobart was afforded the opportunity to offer this testimony both for purposes of impeachment and as admissions, to show that the answers were made by O'Brien at a hearing under oath and under the pains and penalties of perjury and the date when such testimony was given. Indeed, the trial court was willing to permit the court stenographer to testify that these answers were made under oath by O'Brien at a hearing in her presence.

Certainly this is not a situation where the trial court's exclusion rendered the remainder of the evidence unintelligible to the jury. See Commonwealth v. Cataldo, 1950, 326 Mass. 373, 94 N.E.2d 761; Commonwealth v. West, 1942, 312 Mass. 438, 45 N.E.2d 260. Moreover, we believe that those circumstances surrounding the contradictory testimony which were allowed by the trial court would have been sufficient to recall the particular occasion to the mind of the witness, O'Brien, if Hobart had confronted him with said testimony.

We conclude that no prejudicial error was committed by the trial court on this ruling.

The second ruling of the trial court assigned as error is the admission of certain testimony during the cross-examination of John H. Robinson, a witness for Hobart, concerning a prior statement he had made about the accident. The record, quoted below, shows that the trial court admitted this statement only for the purpose of impeaching credibility and that Hobart's counsel consented to the court's ruling:

"The Court: You have no objection if it is admitted for the purpose of impeaching credibility?

[Appellant's counsel] "Mr. Mahony: Impeaching credibility. I certainly do not.

"The Court: Confine it to that.

[Appellee's counsel] "Mr. Prendergast: Confine it to that. All right, thank you."

Now Hobart states in his brief that his counsel said "I certainly do" and not "I certainly do not," claiming that the record is in error. O'Brien, on the other hand, states that the record is correct. Under such circumstances we must abide by the record as it stands. If the record were in error, Hobart should have taken measures to correct it before submitting it on appeal. Absent such correction, we conclude that Hobart did not save his rights on this point.

The third ruling assigned as error by Hobart is the trial court's exclusion of his offer in evidence of a declaration filed by O'Brien in another action in Middlesex Superior Court brought by him against Robert Whitney, whose automobile was also involved in the accident, to recover for the same injuries for which the instant action was brought. In that declaration "the plaintiff [O'Brien] claimed that the defendant [Whitney] so negligently and unskillfully drove a motor vehicle on a public highway called Route 2, Concord, Mass., on the 21st day of June 1952, and by reason thereof said motor vehicle struck the motor vehicle in which the plaintiff was then properly riding along said highway, and as a consequence of which the plaintiff was seriously and permanently injured." Ho-

bart offered this declaration for the purpose of impeaching O'Brien's testimony in the instant trial where he stated that he saw Whitney's car on an incline about 800 feet away and did not see it again before the collision. Prior to this offer the trial court had permitted Hobart to confront O'Brien in cross-examination with certain answers he had given to interrogatories propounded in the Whitney action.

▇ We cannot see any inconsistency between the O'Brien declaration, set forth above, in the Whitney action and his testimony at the instant trial and on that ground alone would affirm the trial court on its exclusion. But, even conceding some innate inconsistency between these two statements, the declaration in the Whitney action would not be admissible. For a conventional declaration or formal allegation of negligence, such as we have here, "belongs to that class of formal statements which, in the absence of further proof, are assumed to have originated with counsel rather than to the class of statements of particular fact which can be inferred to have originated with the client himself."[2] Jennings v. Bragdon, 1935, 289 Mass. 595, 194 N.E. 697, 698. There exists no proof in this case that the statements in the declaration originated with O'Brien or were adopted by him.

Finally, Hobart contends that in light of 62 Stat. 957, 28 U.S.C. § 1961 (1952)[3] it was error for the trial court to deny his motion to strike the item of pre-judgment interest calculated from the date of the writ. This argument invites but brief consideration in view of the detailed treatment given this general problem by this court in Sylvania Electric Products v. Barker, 1 Cir., 1955, 228 F.2d 842, certiorari de-

2. For cases where it was held that the attorney was presumably acting under special authorization of his client because the statements set out a specific cause of action or defense, see Johnson v. Russell, 1887, 144 Mass. 409, 11 N.E. 670, Clarke v. Taylor, 1929, 269 Mass. 335, 168 N.E. 806. See also Frank R. Jelleff, Inc., v. Braden, 1956, 98 U.S.App. D.C. 180, 233 F.2d 671, 676, where the

other complaint "spoke specifically of the very garment involved in the present action."

3. "§ 1961. Interest
"Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be

nied 1956, 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 854, Moore-McCormack Lines v. Amirault, 1 Cir., 1953, 202 F.2d 893 and by the Fifth Circuit in New Amsterdam Casualty Co. v. Soileau, 1948, 167 F.2d 767, 6 A.L.R.2d 128, certiorari denied 1948, 335 U.S. 822, 69 S.Ct. 45, 93 L.Ed. 376.

These cases make it quite clear that where, as here, the injury giving rise to the cause of action occurred in Massachusetts, and the federal court obtained jurisdiction through diversity, the substantive law to be applied by the district court is the law of Massachusetts. Mass.Ann.Laws, c. 231, § 6B (1956), providing for interest from the date of the writ, is a part of that substantive law.

We have considered other arguments advanced by Hobart as plaintiff-appellant and defendant-appellant, such as his argument that the damages were excessive, only to reject them as without merit. We do not think they call for separate discussion.

Judgments will be entered affirming the judgments of the district court.

levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State Law. June 25, 1948, c. 646, § 1, 62 Stat. 957."