DAVID B. GEARY & another *vs.* H. P. HOOD & SONS, INC.

Essex.     October 7, 1957. — November 6, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Negligence,* In delivering milk, Ice, Dangerous article.   *Nuisance.*

Evidence of the circumstances in which an employee of a milk company
made his daily delivery of milk at a primary grade schoolhouse during
a morning by leaving an uncovered case of milk, with several pounds of
ice on top of it, in the vestibule of the schoolhouse adjacent to the
play yard, and during the afternoon one of the school children threw
a piece of the ice onto the ground in the yard in order to break it and a
fragment of the ice struck another child in the eye did not warrant a
finding that the employee was negligent or created a nuisance with
respect to the injured child.

TORT.    Writ in the Superior Court dated February 10,
1954.

The action was tried before *Collins,* J.

*William Lender,* for the plaintiffs.

*Philander S. Ratzkoff,* for the defendant, was not called on.

WHITTEMORE, J.   This is an action of tort, tried to a jury,
to recover for the loss of sight in the right eye of the minor
plaintiff and for the father's consequent loss and expense.
The judge in the Superior Court directed a verdict for the
defendant on all the counts of the declaration.   There was
no error.

Taken most favorably for the plaintiffs the evidence shows
facts as follows:  At some time in the morning of April 24,
1950, the defendant's employee made his daily delivery of
a case of milk to the Bradstreet Primary Grade School build-
ing in Gloucester by depositing it in the front vestibule with
five or six pounds of ice on top of it "to ice the milk down"
and without a cover thereon.   He had made such deliveries
from the early fall of 1949.   He knew that children played

in the schoolyard and that they frequently had to pass by the milk and ice in the vestibule. Photographs in evidence show a small wooden schoolhouse with a shed-like vestibule immediately adjacent to the play yard and raised two steps above it, and that the vestibule encloses a shallow floor area with spaces either side of the entrance door slightly less in width than the width of the door. The employee had never seen the children playing with ice. He would come back each day at around 4 P.M. to pick up the empty case. The school children often played in the yard after school was out "sometimes . . . with the ice or played games," and on many occasions would pick up ice from the case, throw it around, and smash it to reduce to smaller size pieces which were too big to suck. On various occasions prior to April 24 pieces of ice had been "scattered around the playground area." About 4 P.M. on April 24 the minor plaintiff, then seven and one half years old, was seated on steps in the schoolyard when a playmate, nine years old, threw a piece of ice on the ground in order to break it. One of the resulting fragments struck the right eye of the minor plaintiff, cutting the cornea.

On these facts there is no basis for finding a lack of that "high degree of care" which the "expected presence of school children required." *Clouatre* v. *Lees,* 321 Mass. 679, 680. It could not have been found, reasonably, that the employee should have "anticipated that harm to a child would be likely to occur" (*Dennehy* v. *Jordan Marsh Co.* 321 Mass. 78, 80) from placing the case, with ice, in the vestibule. *Cavanaugh* v. *Smith,* 226 Mass. 179. It must be assumed, as the plaintiffs urge, that children will be tempted to play with ice and to suck it, if it is at hand, and that children at play sometimes throw available objects for various reasons. But almost every object placed in schoolhouses and play yards for school purposes may conceivably inflict serious and regrettable injury when thrown. The milk manifestly was for use of the school. The delivery, inside the vestibule, was at a place which at some time before the opening of school in the morning would, presumably, come under

the general supervision and control of one or more responsible adults. Ice to keep the milk safely potable was a reasonably necessary part of the delivery. The employee would have been justified in assuming that upon and after the arrival of a teacher there would be about as much supervision over the case, milk and ice, as over other objects on the premises for school purposes. See Prosser on Torts (2d ed.) § 32, "Shifting Responsibility," page 143. If it could have been found, reasonably, that the employee knew that on some days by 4 P.M., after those in charge at the school had presumably received the delivery, and distributed the milk to the school children, some of the ice had found its way into the yard, this would not make it materially less reasonable to place the ice on the milk for the morning delivery. There is no basis for a finding that the employee knew or should have assumed that the ice was being used for purposes of play, or that conditions of supervision in the schoolyard were such that the throwing around of ice, as a common occurrence, would take place or that any playing with ice would occur before receipt of the delivery by a supervising adult. See *Caissie* v. *Cambridge*, 317 Mass. 346, 349; *Marengo* v. *Roy*, 318 Mass. 719. "Due care does not require that special precautions be taken against that which is only remotely possible," *ibid.*, 722. *Cavanaugh* v. *Smith*, 226 Mass. 179. See *Goldberger* v. *David Roberts Corp.* 139 Conn. 629; *Kos* v. *Catholic Bishop of Chicago*, 317 Ill. App. 248. Compare *Dennehy* v. *Jordan Marsh Co.* 321 Mass. 78; *Ryder* v. *Robinson*, 329 Mass. 285. We are unable to agree that ice is so much more potentially dangerous than objects commonly in and about school buildings such as pens, pencils, inkwells, books, book straps, and items of play equipment, that it must, for that reason alone, be treated with unusual care when delivered into a schoolhouse for school purposes.

As there is in our view no basis for a finding of negligence we do not reach the question of the significance of the foreseeability of the particular accident. Compare *Glassey* v. *Worcester Consolidated Street Railway*, 185 Mass. 315, 317; *Fucci* v. *W. W. Welch, Inc.* 329 Mass. 467, 469.

The allegations of a nuisance add nothing to the plaintiffs' case. *Samuel* v. *White Fuel Corp.* 332 Mass. 264, 267. See *Gaw* v. *Hew Construction Co.* 300 Mass. 250, 254–255; *Caissie* v. *Cambridge,* 317 Mass. 346, 348.

No error is shown in the exclusion of evidence.

*Exceptions overruled.*