**METROPOLITAN COAL COMPANY, Inc., Defendant, Appellant,**

v.

**Franklin JOHNSON, Plaintiff, Appellee.**

**NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY, Defendant, Appellant,**

v.

**Franklin JOHNSON, Plaintiff, Appellee.**

**Nos. 5399, 5400.**

United States Court of Appeals
First Circuit.

April 3, 1959.

Paul R. Frederick, Boston, Mass., with whom Peter D. Cole and Badger, Pratt, Doyle & Badger, Boston, Mass., on brief, for Metropolitan Coal Co., appellant.

Noel W. Deering, Boston, Mass., for New York, N. H. & H. R. Co., appellant.

John V. Higgins, New York City, with whom Thomas J. O'Neill, New York City, Joseph P. Coughlin, Boston, Mass., and O'Neill, Higgins & Latto, New York City, on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff-appellee, a citizen of Rhode Island, brought suit in the court below under its diversity jurisdiction to recover for personal injuries allegedly caused by the combined negligence of the defendants-appellants, The New York, New Haven and Hartford Railroad Company and Metropolitan Coal Company, Inc., both Massachusetts corporations. A trial by jury resulted in a verdict for the plaintiff on which the court below, after denying motions by the defendants for judgment n. o. v., entered the judgment for the plaintiff from which the defendants have taken these appeals.

There is no serious dispute over the following basic facts.

The plaintiff, a veteran employee of the defendant railroad, although carried on the rolls as a spare freight conductor, was actually serving on the date of his injury as a flagman on one of the railroad's regularly scheduled freight trains running between Boston, Massachusetts, and New Haven, Connecticut. On the afternoon of February 8, 1950, he boarded an express passenger train of the defendant railroad in Rhode Island to go from his home in that state to join the crew of his freight train in Boston prior to the start of its run to New Haven. As the express train carrying the plaintiff was proceeding over the railroad's main line at a speed of 65 to 70 miles per hour past the defendant coal company's yard located on a siding beside the main line in Forest Hills, a few miles south of Boston, it ran over a manila covered steel cable belonging to the coal company and used by it in connection with a winch to move coal cars on its siding when no locomotive was available. It could readily be found on the evidence, indeed it is reasonably certain and appears to be conceded, that just before the express train reached the scene mischievous boys had taken the cable from where the coal company employees had left it stretched out beside the coal company siding and dragged it across the railroad tracks as a prank. When the front wheels of the train went over the cable a hook weighing about 10 pounds attached to one end of it flew up and shattered the car window beside the plaintiff showering him with broken glass and inflicting the injuries upon him for which he seeks to recover in this action.

At the time of the accident the plaintiff was traveling on a pass issued to him pursuant to a provision in an agreement between the Brotherhood of Railroad Trainmen and the railroad that: "Conductors will be given term passes good between all stations on the district or districts on which they run." On the back of the pass appeared the following statement (the italics are ours):

"This pass is issued and accepted as a gratuity by the person named therein, who further agrees that it forms no part of the compensation for his or her services. *Except when used in the performance of service required by the user's employment by the Company*, the user expressly assumes all risk of accident and of personal injury and loss or damage to property, regardless of their causes, and absolves the Company from all liability therefor. As a condition to its issue, it is declared by the user that such user is not prohibited by law from receiving free transportation, and further that the pass will be lawfully used. This pass will be taken up if presented by any other than the person named therein."

The questions presented on this appeal are whether there is any legally sufficient evidence in the record to warrant a finding that either defendant was causally negligent, and, if there is evidence of the railroad's causal negligence, whether it is liable to the plaintiff therefor under the terms and conditions of the pass on which he was riding. Before we take up these questions, however, we must dispose of a preliminary matter.

The plaintiff's complaint asserts two causes of action; one against both defendants grounded upon their common law negligence and one against the railroad alone grounded upon its lia-

bility under the Federal Employers' Liability Act, 35 Stat. 65 (1908), as amended, 45 U.S.C.A. §§ 51–60, and the Federal Safety Appliance Act, 27 Stat. 531 (1893), as amended, 45 U.S.C.A. §§ 1–16.[1] The court below at the trial indicated that it was "disposed to direct a verdict" for the defendant on the count under the FELA and counsel for the plaintiff thereupon, apparently to save whatever rights his client might have with respect to that cause of action, agreed to withdraw it and was permitted to do so. Counsel for the plaintiff acquiesced in these rulings, and of course the plaintiff has taken no appeal. But this does not dispose of the matter, for it is well established that the Federal Employers' Liability Act, when applicable, is the exclusive remedy against a railroad for injuries to its employees. Camerlin v. New York Central R. Co., 1 Cir., 1952, 199 F.2d 698. Thus disregard of the Act by the parties does not relieve the court of the necessity for determining whether it applies. See Sassaman v. Pennsylvania R. Co., 3 Cir., 1944, 144 F.2d 950.

Prior to the amendment of the FELA in 1939, 53 Stat. 1404, the test to determine whether or not it applied was to inquire whether the employee was "at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it." Shanks v. Delaware, L. & W. R. Co., 1916, 239 U. S. 556, 558, 36 S.Ct. 188, 189, 60 L.Ed. 436. The amendment of 1939, however, abolished the so-called "moment of injury" rule of the Shanks case by making the Act applicable to "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce * * *." See Southern Pacific Co. v. Gileo, 1956, 351 U.S. 493, 497, 76 S.Ct. 952, 956, 100 L.Ed. 1357. There can be no doubt whatever that when the plaintiff was actually at work for the railroad his duties as an employee were in furtherance not only of interstate, but in all probability also of foreign commerce as well. But, was he employed by the railroad "in such commerce" within the meaning of § 1 of the Act while he was riding to work on the railroad's passenger train? We think this question must be answered in the negative.

It has long been established that the FELA applies not only when an employee is injured while actually engaged in performing duties of the kind required for application of the Act, that is, duties any part of which are in "the furtherance of interstate or foreign commerce," or "in any way directly or closely and substantially" affecting such commerce, but also when an employee is traversing the employer's premises (and perhaps in some circumstances even adjacent premises, see Bountiful Brick Co. v. Giles, 1928, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507), on his way to or from his work. See Erie R. Co. v. Winfield, 1917, 244 U.S. 170, 173, 37 S.Ct. 556, 557, 61 L.Ed. 1057, wherein it is said: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment," and further, "Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole * * *."

While it can no longer be seriously suggested that an employee of a carrier is covered by the FELA only when he is actually at work on his job, Morris v. Pennsylvania R. Co., 2 Cir., 1951, 187 F.2d 837, 841, we have not found any satisfactory precise verbal formula, and we do not see how any can be laid down, which can be applied automatically to determine the distinction between an employee's activities within and those without the coverage of the Act. See Cudahy Packing Co. of Nebraska v. Parramore, 1923, 263 U.S. 418, 424, 44 S.Ct. 153, 68

---

1. The Federal Safety Appliance Act is not involved in any way on this appeal for the court below correctly ruled that there is no evidence whatever of any defect or insufficiency in the railroad's equipment or appliances.

L.Ed. 366. Situations of the kind under consideration will have to be resolved as they arise on past decisions and general considerations.

■■ The only case closely in point which has come to our attention is Sassaman v. Pennsylvania R. Co., 3 Cir., 1944, 144 F.2d 950, referred to above and to be mentioned briefly on another point hereinafter. In that case a majority of the full bench of the Court of Appeals for the Third Circuit held that a railroad employee whose actual duties brought him within the coverage of the FELA was not thereby precluded from maintaining an action at common law against his employer to recover for injuries received when he stepped into a hole in the defendant's station platform when alighting from one of its trains which he had taken at the end of his day's work to go from the place of his employment to his home. That case is essentially on all fours with this one (it is of course legally inconsequential whether the employee suffers his injury on his way to work or on his way home), and we think it was correctly decided. Indeed there is little for us to add to the discussion in the Sassaman case of the point we now have under consideration herein. We would like to emphasize two matters, however, which we think are important in deciding the question before us. The first of these is that although the plaintiff was on the carrier's premises when he was injured, he was not on a part of its premises which it was necessary for him to use to reach his work. He was not required to go to work on the defendant's passenger train. He could have taken any one of a number of other routes, trains or means of transportation to go from his home to his work. The other consideration we think to be material is that the obvious purpose of the FELA is to enlarge the remedy of railroad employees injured as a result of the hazards incident to their work, and the plaintiff's employment as a flagman on a freight train did not subject him to any peculiar or abnormal danger while he was riding to work on one of his employer's passenger trains. On that train he was exposed to no other or greater hazard than any other passenger.

In short we think that to extend the coverage of the FELA to prevent the plaintiff from recovering at common law would not only conflict with the only case we have found in point, the Sassaman case, but would also go beyond any test, none of which we find entirely satisfactory, laid down in any of the decided cases which have come to our attention. And furthermore, it seems to us unwarranted to extend the coverage of the Act to an employee who is miles away from his job and only proceeding to it in a public conveyance, operated to be sure by the defendant-employer, but still only one of several other means of transportation the plaintiff might have chosen.

■ The next matter for our consideration is the effect of the conditions printed on the back of the plaintiff's pass on his right to recover from the railroad for negligence.

The plaintiff-appellee contends that at the time he was injured he was rendering a "service" required by his employment by the railroad within the meaning of the language used by the railroad on the back of his pass so that the clause exempting the railroad from liability to him for negligence, by its very terms, does not apply. In more detail, the plaintiff's argument is that although he was not engaged in actual employment at the time he was injured so as to have a right of action under the FELA, he was, nevertheless, in going from his home to his work, "in the performance of service" required by his employment on the defendant railroad's freight train.[2] Wherefore he contends that his

2. It is worth observing at this point that the remarks of the court in Sassaman quoted by Chief Judge Magruder in his dissent were made with reference to an employee's right of action under the FELA and that we have followed Sassaman in holding that no cause of action exists under that Act in the circumstances presented in the case at bar. There was no exception to the exculpatory clause on

situation is squarely within the exception of the clause on the back of his pass wherein he undertook to assume the risk of accident or injury to himself and to absolve the railroad from liability therefor. We find this argument persuasive.

The testimony is clear and not contradicted that over the years the plaintiff had been assigned to work on various trains starting from various yards and stations, that such assignment of railroad men doing the kind of work done by the plaintiff was necessary to provide experienced men to handle trains, and that it was an established custom in the railroad business to provide train operating personnel with passes for use to reach the starting points of their trains which might well be at points distant from their homes. Obviously the plaintiff would not have any need to use his pass when he was actually at work on the freight train to which he was assigned as a crew member. Moreover, when he was actually at work as a member of his train crew, the plaintiff's rights would be governed exclusively by the FELA, and under § 5 of that Act, 45 U.S.C.A. § 55, the railroad is expressly prevented from exempting itself from the statutory liabilities imposed upon it by any "contract, rule, regulation, or device whatsoever." The only uses the plaintiff would have for his pass would be to travel for purely personal reasons or to go to his job. In traveling for reasons purely personal he certainly would not be using his pass in the performance of any service required by his employment. Thus if any meaning whatever is to be given to the exception from the assumption of risk clause printed on the back of the pass, it must be held to mean that the railroad did not purport to exempt itself from liability when the pass was being used by the employee to whom it was issued in traveling between his home and his work.

Taking this view of the language used on the particular pass involved in this case, there is no occasion for us to consider the plaintiff-appellee's second contention that, as held in the Sassaman case, supra, a railroad as a matter of law cannot limit its liability for negligence on a pass issued by it to an employee pursuant to a collective bargaining agreement when the pass is used by the employee when traveling between his work and his home.

■ The sufficiency of the evidence to support the jury's finding of causal negligence on the part of the defendants remains for consideration.[3]

■ Under Massachusetts law the duty of a carrier by rail to its passengers is to exercise reasonable care under the circumstances, and among those circumstances are the carrier's control over the passenger and the likelihood of serious consequences to the passenger in the event of the carrier's negligence. "Ac-

---

the back of the pass under consideration in Sassaman so in that case the question now under consideration here was not passed upon or considered.

3. It is clear that the duty of care owed by both defendants is governed by Massachusetts law. The sufficiency of given facts to withstand a motion for a directed verdict in a case like that at bar is difficult if not impossible to distinguish from their sufficiency to invoke the substantive rule of law. Cf. Canadian Pacific R. Co. v. Sullivan, 1 Cir., 1942, 126 F.2d 433. Perhaps this relationship between the substantive rule and the standard for directing a verdict, as the dissent intimates, is not so pronounced as to other questions involved in directing a verdict, for example, what portion of the record is to be looked to in evaluating whether the evidence is sufficient to allow the jury to find the given facts. See, generally, Note, State Procedure and the Federal Courts: Evidence, Juries, and Directed Verdicts under the Erie Doctrine, 66 Harv.L.Rev. 1516 (1953). But we do not find it necessary or appropriate in this case to determine the broad question of whether the standard for directing a verdict in a diversity negligence case in a federal court is to be federal or state. The point has not been briefed or argued by either party, but so far as we are aware there is no significant difference between our standard and the applicable state standard. Compare, e. g., Hobart v. O'Brien, 1 Cir., 1957, 243 F.2d 735, 741, with Kelley v. Railway Express Agency, 1943, 315 Mass. 301, 302, 52 N.E. 2d 411.

cordingly it is held that reasonable care under the circumstances is the highest degree of care—not the highest degree of care imaginable, but the highest degree of care that is consistent with the requirements of the public for speedy and inexpensive as well as safe transportation and with the practical operation of the business." Carson v. Boston Elevated Railway Co., 1941, 309 Mass. 32, 35, 33 N.E.2d 701, 703.

 The problem is to apply this test to the evidence, and the evidence is that the accident occurred in an urban area, partly residential and partly commercial, where the railroad's tracks are on an embankment some 15 or 18 feet above street level, and that for years the railroad had been plagued by juvenile trespassers on its right of way in the vicinity of the scene of the accident who almost daily put stones, pieces of wood, pieces of iron or other objects on its tracks. The case is close, but we think in view of the high degree of care required of the railroad and its long experience with mischievous interlopers on its right of way through the built-up area where the accident happened, the jury could reasonably have concluded that the railroad should, and without too great burden could, have taken more precautions than it did for the safety of its passengers by fencing its main line right of way in the area, or by patrolling it, or perhaps by running its trains a little bit slower. While we might not agree with the result reached by the jury, we cannot say that there is no warrant whatever in the evidence for the finding of the jury that the railroad failed to conform to the standard of care required of it by law and that its negligence was the cause of the plaintiff's injuries.

 Under Massachusetts law the coal company is not necessarily insulated from liability by the wrongful act of the mischievous boys who trespassed upon its property and took its cable to stretch across the railroad tracks. In Stone v. Boston & Albany Railroad Co., 1898, 171 Mass. 536, 540, 51 N.E. 1, 3, 41 L.R.A. 794, it was said: "It cannot however, be considered that in all cases the intervention even of a responsible and intelligent human being will absolutely exonerate a preceding wrongdoer." And in Horan v. Inhabitants of Watertown, 1914, 217 Mass. 185, 186, 104 N.E. 464, 465, the rule in Massachusetts was clearly and succinctly stated as follows: "Where as here the original negligence of the defendant is followed by the independent act of third persons which directly results in injurious consequences to the plaintiff, the defendant's earlier negligence may be found to be the direct and proximate cause of those injurious consequences, if according to human experience and in the natural and ordinary course of events the defendant ought to have seen that the intervening act was likely to happen." See also Lane v. Atlantic Works, 1872, 111 Mass. 136; Glassey v. Worcester Consolidated St. R. Co., 1904, 185 Mass. 315, 70 N.E. 199; Geary v. H. P. Hood & Sons, Inc., 1957, 336 Mass. 369, 145 N.E.2d 716.

The evidence is that for a dozen or so years the coal company had been bothered by youthful hoodlums coming onto its property from the railroad right of way and throwing coal and stones at coal company employees. There is ample evidence that these boys were easily driven off and there is only the meagerest evidence, if there is any really substantial evidence at all, that they ever took any coal company property.[4]

 Under these circumstances we find it difficult to find any basis in the evidence to support the conclusion that the coal company officials, knowing of the presence of boys on their property

4. That evidence consists of the answer "Yes" to the following question directed to the retired superintendent of the coal company's yard: "The trouble I asked you about, whether it was common for children to be on the railroad track and more or less in gangs of hoodlums raising the devil all the time, throwing things and taking things?"

and of their activities there, ought as reasonable men to have anticipated that during working hours (the accident happened about 4:15 P.M.), boys would come upon coal company property, carry off a one-inch manila covered steel cable some 30 feet long with a 10 pound hook attached to one end and use that cable and hook in some such way as to cause personal injuries to another person.[5]

The coal company's cable had been left where it posed no hazard to anyone. It was not possible for a slight or casual contact by some passer-by to set it in motion in a way to injure others. Cf. Ryder v. Robinson, 1952, 329 Mass. 285, 107 N.E.2d 803, wherein verdicts for the plaintiffs, a father and his minor daughter, were allowed to stand on evidence that the defendant's employees left a heavy section of iron fence leaning so precariously against another section of fence in a passageway that children playing in the passageway dislodged it so that it fell and injured the minor plaintiff. Moreover, the cable was heavy and bulky, and not the sort of thing one would think attractive to children as a plaything. This likens the case at bar to Glassey v. Worcester Consolidated St. Ry. Co., 1904, 185 Mass. 315, 70 N.E. 199, in which the court sustained a directed verdict for the defendant in actions brought against it to recover damages for personal injuries and loss of consortium resulting from injuries to the wife caused by boys rolling a heavy reel of wire belonging to the defendant down a highway, the reel having been left by the defendant's employees on its side in the grass beside the road. The cable is not even to be likened to a plank and wooden horse which children could and might well be expected to convert into a seesaw. And this makes the case at bar even stronger for the defendant than Caissie v. City of Cambridge, 1944, 317 Mass. 346, 58 N.E.2d 169, wherein a finding for the defendant city was affirmed on evidence that the plaintiff was injured when children who had made a seesaw out of a wooden horse and a plank left in the street by city employees lost control of their improvised plaything so that it fell across a sidewalk and broke the plaintiff's leg. See also Geary v. H. P. Hood & Sons, Inc., 1957, 336 Mass. 369, 145 N.E.2d 716, in which the court said there was no basis for finding negligence on evidence that the defendant's driver left a case of milk in the vestibule of a primary school with a five or six pound chunk of ice on top of it, as he had done for years, and at recess a child threw the ice on the ground to break it and a piece struck the plaintiff in the eye. Furthermore there is nothing inherently dangerous about the cable and this makes the case at bar stronger for the defendant than Horan v. Inhabitants of Watertown, 1914, 217 Mass. 185, 104 N.E. 464, wherein the court sustained a directed verdict for the defendant town in an action brought against it for personal injuries caused by the explosion of dynamite, carelessly left unguarded by town employees in a public street, which was taken by boys and thrown into a fire they had built on adjoining premises.

 On the basis of the application of the Massachusetts rule in the cases cited above it seems to us that the Supreme Judicial Court of the Commonwealth of Massachusetts would hold on the facts of the case at bar that the coal company could not be found chargeable for failure to use ordinary care for the reason that its employees during business hours left its cable stretched out beside its siding unguarded.

Since in our view the defendant-appellant coal company is entitled to prevail as a matter of law, there is no need for us to consider its objections to the admission and exclusion of evidence.

A judgment will be entered in No. 5400 affirming that part of the judgment of the District Court which provided for recovery from The New York, New Hav-

---

5. To impose liability it is "not necessary that the exact manner in which the accident occurred should be foreseeable."

Ryder v. Robinson, 1952, 329 Mass. 285, 287, 107 N.E.2d 803, 804, and cases cited.

en and Hartford Railroad Company; and a judgment will be entered in No. 5399 vacating that part of the judgment of the District Court which provided for recovery from the Metropolitan Coal Company and, as to this part, remanding the case to that Court for the entry of judgment in accordance with the views expressed in this opinion.

MAGRUDER, Chief Judge (dissenting in part).

I do not express dissent from most of the opinion of the court. As to the liability of the coal company, I think it is probably true, from the state court decisions referred to in Judge WOODBURY'S opinion, that the Supreme Judicial Court of Massachusetts would probably say, on the facts presented in this case regarding the liability of the coal company, that there was not enough evidence of negligence to be submitted to a jury, and that, therefore, a trial judge should direct a verdict for defendant.

But is this a matter of "substance" or "procedure", within the test of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188? This seems to me to be not an easy question. Though I do not dissent from the conclusion reached by the court, I want to say that I reserve judgment on this point, and will feel free, in another case, to determine the issue after full argument.

We have many times pointed out that, though the preliminary function of the trial judge in these cases is sometimes spoken of as the determination of a "question of law" (because the decision is made by the judge), what he is really called upon to do, in the traditional division of functions as between judge and jury, is to exercise a preliminary judgment on the facts; to say whether, in his judgment, the conclusion to be reached as to the existence of negligence is sufficiently debatable, on the facts, so that a reasonable jury of twelve men might rationally decide that the defendant had done a negligent act. See Channell v. Sampson, 1 Cir., 1939, 108 F.2d 315; Marshall v. Nugent, 1 Cir., 1955, 222 F.

2d 604, 611, 58 A.L.R.2d 251; New York, New Haven & Hartford R. Co. v. Dox, 1 Cir., 1957, 249 F.2d 572, 573. See also Smith v. Reinauer Oil Transport, Inc., 1 Cir., 1958, 256 F.2d 646, certiorari denied 1958, 358 U.S. 889, 79 S.Ct. 133, 3 L.Ed.2d 117.

In the case at bar, there is no difference between the state and federal courts as to the substantive rule to be applied— the defendant is liable if he has proximately caused harm as the result of a negligent act. So, the standard to be applied is the same, the care of a reasonable man under like circumstances. Also, the state courts have determined that there may be liability for negligence on the part of a more remote actor, when he sets up an undue risk through negligence in failure to take account of the propensities of meddling children, even though the harm is more immediately caused by the intervening act of such meddlesome children.

Under these circumstances, when a negligence case gets into federal court by virtue of diversity of citizenship, it might be said that, despite Erie R. Co. v. Tompkins, the federal court, applying the state-created rules of substantive law, should determine the issue of negligence in accordance with its historic division of functions as between judge and jury, without looking over its shoulder to speculate whether a state court, on these same facts, would direct a verdict for the defendant. Cf. Byrd v. Blue Ridge Rural Electric Co-operative, Inc., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953; Dice v. Akron, Canton & Youngstown R. Co., 1952, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398.

I do, however, dissent from so much of the court's opinion as holds that the terms embodied in the free pass do not result in exempting the railroad from liability for negligence, if any, of its servants. I am unable to see how it can be said that, under the circumstances here related, the employee was within the exception stated in the pass as being engaged in the "performance of service required by the user's employment by the

Company". In fact, in Sassaman v. Pennsylvania R. Co., 3 Cir., 1944, 144 F.2d 950, much relied on by the majority, there occurs (at p. 957) the following important statement (emphasis added):

"The record in this very case discloses that, at a former time when the plaintiff was resident in Newark, his services as a train dispatcher were utilized by the railroad in Philadelphia between which place and his home he travelled back and forth on his pass. In so travelling, *he was not performing the service for which he was employed* and, therefore, had no right of action as an employee for any injury received in the course of travel."

So far as any requirement by the railroad was concerned, the employee was not "required" to ride from Providence to Boston on the railroad. All the railroad "required" was that Johnson present himself for work at the appointed place and time; his travel was no "service". He would have been free to stay at a hotel in Boston or he might have driven to work in a private car or taken a bus. The railroad received no additional benefit from Johnson's having chosen to ride the train that particular morning, and hence I do not see that it should be required to bear any increased risk. It seems strange that, whereas the railroad would not have owed him anything more in the way of compensation nor would have been responsible for his safety in walking across the street or riding the subway, driving, or taking the bus, it should be liable to him in this case. If Johnson had been riding to inspect the work of the train crew or had been "deadheading" between working runs, pursuant to a work assignment, he would have been in "performance of service required" by his employment, but this is neither of those cases.

Assuming, as seems clear to me, that the plain purport of the language of the pass indicated an intention to exempt the railroad from liability for negligence (with the exception noted above), I have no doubt that such exemption cannot be held to be either against public policy or against any provision of the Hepburn Act, 49 U.S.C.A. § 1(7). In that respect I am content to rely upon the argument by Biggs, Ch. J., dissenting in the Sassaman case, supra. This pass was no more a thing of value to the employee, perhaps in lieu of additional wages (or no less gratuitous), than, for example, a pass for his family. See Kansas City Southern Ry. Co. v. Van Zant, 1923, 260 U.S. 459, 43 S.Ct. 176, 67 L.Ed. 348.

Accordingly I would reverse the judgment against the defendant railroad.