LYDIA BANNISTER *vs.* BERKSHIRE STREET RAILWAY
COMPANY.

Berkshire.    September 20, 1938. — December 28, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Negligence*, Bus. *Carrier*, Of passengers. *Practice, Civil*, Discretionary
control of evidence.

A finding would not have been warranted that the owner of a motor bus,
a common carrier, was negligent toward an elderly passenger who, as
she was entering a seat, struck her head on a luggage rack, where it
appeared that the seats were arranged transversely on each side of
an aisle and so close together that a passenger had to enter sidewise,
that the luggage rack was from four feet nine inches to four feet three
inches above the floor and that the passenger was five feet four inches
in height.

No abuse of discretion appeared, at the trial of an action for injuries to
a passenger on a motor bus caused by his bumping his head on an
overhead luggage rack, in the exclusion of evidence that "other pas-
sengers had bumped their heads against luggage racks similarly
located in defendant's buses."

TORT.    Writ in the District Court of Lee dated August
16, 1935.

On removal to the Superior Court, the action was tried
before *Broadhurst*, J.

*J. M. Shea*, for the plaintiff.

*W. J. Donovan*, for the defendant.

FIELD, C.J.    This is an action of tort brought against a
street railway company to recover compensation for personal
injuries sustained by the plaintiff when riding as a passenger
in a motor bus operated by the defendant.    The defendant's
motion for a directed verdict was granted, subject to the
plaintiff's exception, and a verdict was returned by order
of the trial judge.    Evidence offered by the plaintiff was
excluded, subject to her exception.    The case was reported
upon a stipulation of the parties which provides in part that
"if the court's exclusion of such evidence was not prejudicial
error, and the court's direction of a verdict for the defendant

was proper, judgment shall be entered for the defendant on the verdict returned by order of court."

It appears from the report that the testimony would have warranted the jury in finding the following facts: "The defendant is a common carrier engaged in the business of transporting passengers for hire by means of motor buses in the city of Pittsfield." "At about three o'clock in the afternoon of February 7, 1935, the plaintiff, then aged seventy-two years and five feet four and one half inches in height, and her daughter, a woman of middle age, boarded a motor bus of the defendant at Wahconah Street in Pittsfield as passengers. . . . They entered at the front door on the right side of the bus, paid their fares and proceeded down the center aisle to the seat which they intended to take. The seats of the bus were arranged in pairs opposite each other on each side of a center aisle, all of them facing the front of the bus. The plaintiff's daughter, walking ahead on reaching the seat which she wished to take, stopped and turned and indicated to her mother to enter that seat. The seats were too close together to permit a passenger to walk into a seat without turning sidewise. The plaintiff turned sidewise so that she might enter the seat and as she was entering she struck the right side of her head in the region of the temple between the right ear and right eye against a luggage rack. A luggage rack extended from a point near the front to a point at or near the rear of the bus over the seats on each side of the center aisle. The racks were of wood fastened by screws and brackets to the side walls of the bus. Each rack extended outward from the wall and upward to a point about over the end of the seats next to the aisle. The space between the inner edges of the luggage racks on each side of the bus was about equal to the width of the aisle, namely — 28½ inches. The inner edge of the rack over the aisle end of the seats was higher than the outer edge against the wall of the bus. At the inner edge over the aisle end of the seats the rack was 57 inches above the floor while at the window it was 51 inches above the floor. The racks were 30 inches in width. They could be removed by removing the screws by which they were fas-

tened to the inner walls of the bus. . . . The height of the bus from the floor to roof over the aisle was 74 inches. The inner edges of the luggage racks over the aisle ends of the seats were below the level of the eyes of an adult person five feet or more in height. It was necessary for a person as many inches tall as the edge of the rack was above the floor, to stoop a little on entering a seat in order to avoid striking against the rack. The plaintiff did not see the luggage rack until after she struck her head against it." There was other evidence more favorable to the defendant.

With respect to the evidence excluded it appears that the "plaintiff offered to prove by the testimony of the defendant's superintendent and the defendant's general manager that other passengers had bumped their heads against luggage racks similarly located in defendant's buses," that this evidence was offered "as stated by the plaintiff's counsel for the sole purpose of proving knowledge on the part of the defendant's agents," and that this evidence was excluded as immaterial.

1. The verdict for the defendant was directed rightly since the evidence did not warrant a finding that the defendant was negligent.

The plaintiff appears to have been a passenger for hire and the defendant a common carrier. On these facts the defendant owed to the plaintiff the duty to exercise reasonable care under the circumstances to furnish buses which were reasonably safe. "Because of the nature of the carrier's undertaking and the relation between the carrier and its passengers, reasonable care under the circumstances is a high degree of care, 'the utmost caution which is compatible with the conduct of the business, according to the requirements of the public, as to rapidity, expense and comfort.'" *Fitzgerald* v. *Boston Elevated Railway*, 274 Mass. 287, 289, and cases cited. But a common carrier of passengers does not warrant that its cars or buses shall be perfect. *Marshall* v. *Boston & Worcester Street Railway*, 195 Mass. 284, 286. *Adduci* v. *Boston Elevated Railway*, 215 Mass. 336, 337.

Clearly, it could not have been found that it was incom-

patible with the conduct of the business according to the requirements of the public for the defendant to provide luggage racks in its buses. And there was no evidence of any defect in the construction of the rack against which the plaintiff struck her head. The risk of danger to her from the rack resulted, so far as appears, solely from its location with respect to the aisle and the seats to be used by passengers. There was no evidence of any condition of traffic or of any conduct of the defendant's agents or servants in operating the bus that would increase the hazard beyond that due to the location of the rack.

For aught that appears, there may have been sound reasons in the requirements of the defendant's business for locating the luggage racks as shown by the evidence. It did not appear that luggage racks so located were not in general use. Indeed, there was evidence to the contrary. See *Adduci* v. *Boston Elevated Railway*, 215 Mass. 336; *Perkins* v. *Bay State Street Railway*, 223 Mass. 235, 236. A finding would not have been warranted that the risk of danger to a passenger from striking his head against a rack so located, while the bus was being operated with reasonable care, could not be readily avoided by a passenger aware of the location of the rack. And it could not have been found that the construction of the bus was so lacking in adaptability to the business of the defendant as a common carrier, or that the risk of danger from the location of the racks was of such magnitude, that the duty of the defendant to exercise care would not be fully performed by warning passengers of the risk of danger. Compare Am. Law Inst. Restatement: Torts, §§ 291, 301 (a) (b). Even such a warning to an ordinarily intelligent person who entered the bus as a passenger would not be required where the risk of danger was apparent to such a person. See *Kelley* v. *Goldberg*, 288 Mass. 79, 81; *Rynn* v. *Fox-New England Theatres, Inc.* 299 Mass. 258. See also *Hunnewell* v. *Haskell*, 174 Mass. 557. There was no evidence that the location of the rack and the risk of danger therefrom were not so apparent. The source of danger was neither wholly nor partially concealed, even to the extent

of being on the floor of the conveyance, as was the case in *Kingman* v. *Lynn & Boston Railroad,* 181 Mass. 387, relied on by the plaintiff. The rack, on the contrary, was within the normal view of a passenger entering the bus. See *Sawyer* v. *Boston Elevated Railway,* 243 Mass. 469, 471–472. And the obvious nature of the risk was not materially affected by the fact that the "seats were too close together to permit a passenger to walk into a seat without turning sidewise." Furthermore, the case would not be taken out of the principles stated by the fact that the plaintiff was a woman seventy-two years of age. The evidence falls short of showing any failure of the defendant to exercise the care for the safety of the plaintiff as its passenger required of a common carrier. *Adduci* v. *Boston Elevated Railway,* 215 Mass. 336. *Perkins* v. *Bay State Street Railway,* 223 Mass. 235. *Sawyer* v. *Boston Elevated Railway,* 243 Mass. 469. The plaintiff relies upon *Hanley* v. *Eastern Steamship Corp.* 221 Mass. 125, and *Dalton* v. *Great Atlantic & Pacific Tea Co.* 241 Mass. 400. They are readily distinguishable.

2. There was no error in the exclusion of the evidence offered. Whether or not its admission would have been error (see *Williams* v. *Winthrop,* 213 Mass. 581, 584–585), its exclusion was, at least, discretionary with the trial judge, particularly since there was no evidence of the circumstances in which "other passengers had bumped their heads against luggage racks similarly located in defendant's buses." *Yore* v. *Newton,* 194 Mass. 250. *Walker* v. *Williamson,* 205 Mass. 514. *Williams* v. *Holbrook,* 216 Mass. 239, 241.

*Judgment on the verdict.*