ALEXANDER MARENGO, administrator, *vs.* ALFRED E. ROY
& others.

Hampden.    September 20, 1945. — November 29, 1945.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Trespass.    Negligence,* Trepasser, Tar kettle, Contractor.

If a boy fell into a kettle of tar while attempting to jump over it from an
adjacent roof, he would not be a trespasser upon the kettle, and its
owner would not be relieved on that ground of the duty to exercise
due care toward him.

Evidence of the circumstances in which a boy, in jumping from a garage
roof in a yard, fell into a covered kettle of hot tar nearby, which its
owner, a roofing contractor engaged in work on the premises, had
left there with its fire extinguished some hours previously, would not
have warranted a finding that the contractor should have anticipated
such an occurrence or that he was negligent toward the boy.

TORT.    Writ in the Superior Court dated January 8, 1942.

Following trial before *Leary,* J., the plaintiff alleged
exceptions.

In this court, the case was submitted on briefs.

*J. F. Hartnett & O. D. Raincault,* for the plaintiff.

*C. R. Brooks, D. B. Wallace, & E. L. Donnellan,* for the
defendants.

QUA, J.    This action is for conscious suffering and death
of the plaintiff's intestate, a boy six years and three months
of age, which resulted from his being burned on May 27,
1941, in a tar kettle containing hot tar located in the back
yard of a tenement house in which his father, the plaintiff,
was a tenant at 52 West Street in Holyoke.

The jury found for the defendants on counts alleging wil-
ful, wanton, and reckless conduct but returned verdicts for
the plaintiff on counts alleging negligence.    On leave re-
served the judge entered verdicts for the defendants on the
negligence counts as well.    The only question presented is
whether there was any evidence to warrant a finding that
the injury and death were caused by the violation of any
duty of care which the defendants owed to the deceased.

The premises were owned by one Perron. In the back yard was a garage, also owned by Perron, the brick wall of which was surmounted by a flat roof a little over six feet above the surface of the yard. The plaintiff himself testified that this garage was not included in the tenement rented to him, and that it was rented to others. The defendants were in the roofing business. Perron had engaged them to put a new tar roof upon the main building and had given them permission to place their tar kettle in the yard. They placed it about three feet from the garage wall. The tar kettle is described as "a sort of stove." It consisted of an outside shell of cylindrical form about three feet high, within which the fire was built, and an inner pot of smaller dimensions, which contained the tar. On the day of the injury the defendants' men finished with the hot tar and put the fire out at about 11 or 11:30 in the forenoon. The top of the tar kettle was covered by a flat piece of sheet metal on which was placed a slab of wood. The injury occurred between 3:30 and 4:30 in the afternoon, while all the defendants' men were on the main roof. There were still from ten to twelve inches of tar in the pot, and although according to all the evidence on the point the fire had been out for several hours, the remaining tar appears to have been hot enough to cause burns. Not all of the evidence just recited seems to have come from sources by which the plaintiff is bound, but none of it was contradicted, and there was nothing from which inferences more favorable to the plaintiff could be drawn.

The only evidence as to how the deceased got into the tar kettle came from a ten year old boy who was an eyewitness, and in the form of declarations which the plaintiff testified the deceased made before his death. The ten year old boy testified that the deceased got up on the garage roof; that an older boy promised the deceased a penny, if the deceased could jump on the cover of the tar kettle; and that the deceased jumped from the roof to the cover, but hit the cover on the side, and "it slid and he fell right in." However, the alleged declarations by the deceased were to the effect that he "thought it was a box" and tried to jump

over it, but went into it; and that he did not know there was tar in it. There was evidence that "after the accident" the cover of the tar kettle was bent and "one side was pushed in." There seems to be no question but that the deceased got into the tar kettle as a result of jumping from the garage roof. The plaintiff himself in his brief states this as a fact.

The defendants contend that they are not liable for negligence because the deceased was injured as the result of trespassing upon their tar kettle. They cite *McGuiness* v. *Butler,* 159 Mass. 233, *Gay* v. *Essex Electric Street Railway,* 159 Mass. 238, *Holbrook* v. *Aldrich,* 168 Mass. 15, *Falardeau* v. *Malden & Melrose Gas Light Co.* 275 Mass. 196, and *Urban* v. *Central Massachusetts Electric Co.* 301 Mass. 519. But this contention is disposed of by the evidence of the declarations of the deceased from which the jury could find that he did not come into contact with the tar kettle intentionally but that he landed upon it unintentionally while trying to jump over it. If the jury believed this, such an unintended and inadvertent contact with the defendants' personal property was not in itself a trespass upon that property. *United Electric Light Co.* v. *Deliso Construction Co. Inc.* 315 Mass. 313, 318. Am. Law Inst. Restatement: Torts, § 217, and comments; § 218, comments a and b. Compare as to real estate, Am. Law Inst. Restatement: Torts, 389, Topic 2, scope note, and §§ 165 and 166, and comments.

But the entry of verdicts for the defendants on the negligence counts was right for another reason. We think there was no evidence that the defendants were negligent with respect to such an injury as that suffered by the deceased in the circumstances shown. Even if the deceased had been playing about on the surface of the yard, it is not clear that there would have been evidence for the jury of negligence in leaving the tar kettle where it was in the condition in which it was left. So far as appears there had been no fire in it for over four hours. So far as appears no one could be injured unless he got into the tar which was still hot in the inner pot. It is not easy to understand how a child too young to appreciate the danger could get into the inner pot

from the surface of the yard or how an older child could get into it without deliberately intending to do so. But however this may be, and whatever duty the defendants may have owed to children in the yard, we think that the defendants were not bound to anticipate and to guard against the bare possibility of injury to some child jumping through the cover into the pot from an adjoining roof, where in all probability he would be a trespasser either as to Perron or as to the tenants of the garage, and where his presence could not reasonably be expected. Am. Law Inst. Restatement: Torts, § 281, comment c. *Jacobs* v. *New York, New Haven & Hartford Railroad,* 212 Mass. 96. *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352. *Bruso* v. *Eastern States Exposition,* 269 Mass. 21, 24. *Morrison* v. *Medaglia,* 287 Mass. 46, 51. *Goyette* v. *Amor,* 294 Mass. 355, 357–358. *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 197. Although there was considerable evidence that children did at times climb upon the garage roof, if in the circumstances this is material, we can discover no evidence sufficient to warrant a finding that the defendants had such knowledge of this as required them to act with reference to it. *Caissie* v. *Cambridge,* 317 Mass. 346, 348–349. Due care does not require that special precautions be taken against that which is only remotely possible. *Gagnon* v. *DiVittorio,* 310 Mass. 475. *Kralik* v. *LeClair,* 315 Mass. 323, 328. *Rogers* v. *Cambridge Taxi Co.* 317 Mass. 578. This case is distinguishable from *Sample* v. *Melrose,* 312 Mass. 170, where it could be found that the defendant should have anticipated that the excavation in the yard would be a source of danger to children who might be expected to play there.

We are of opinion that the defendants were not shown to be liable for this unfortunate occurrence.

*Exceptions overruled.*