HILDA T. PEACOCK, administratrix, *vs.* AMBASSADE REALTY CORPORATION.

Middlesex.     April 2, 1957. — May 29, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Landlord and Tenant,* Common stairway, Landlord's liability to tenant or one having his rights. *Negligence,* Stairway.

Evidence did not warrant a finding of negligence on the part of the owner of a hotel toward a tenant therein who walked across a large, heavy, perforated rubber mat covering a common landing, the floor of which had recently been waxed by an employee of the owner, and who then fell backwards on the edge of the first step of a common stairway leading down from the landing and was injured when the mat moved from its position, came after him and "threw . . . [him] down the stairs."

TORT. Writ in the Third District Court of Eastern Middlesex dated April 3, 1950.

Upon removal to the Superior Court, the action was tried before *Murray*, J.

*John F. Cremens*, for the plaintiff.

*W. Lloyd Allen*, for the defendant.

SPALDING, J. This is an action of tort in which the plaintiff, as administratrix, seeks to recover for injuries suffered by William M. Peacock (hereinafter called the decedent) as a result of a fall on premises of the defendant. The jury returned a verdict for the plaintiff, which was recorded under leave reserved. Thereafter, on motion of the defendant, the judge entered a verdict for the defendant. The plaintiff's exception to this action presents the only question for decision.

We summarize the evidence as follows: At the time of the accident (May 29, 1948) the decedent was a tenant under a lease at the defendant's hotel in Cambridge. He had lived there for fourteen years. In January, 1948, the decedent suffered a shock which resulted in a partial paralysis, causing him to drag his left leg "some" when he walked. On May 29, 1948, he had an errand to do outside the hotel. He came down a flight of stairs to the landing inside the building in front of a side door through which he left the hotel. As he passed over the landing he saw one Donaldson, an employee of the defendant, working on it with pails, mops, and other paraphernalia. The decedent noticed nothing unusual about the floor of the landing as he left. After completing his errand he returned to the hotel between four and five o'clock P.M. and entered by the same door through which he had left. He noticed that the floor of the landing had been waxed. He walked across the landing, which was largely covered by a heavy rubber mat, to go down a flight of stairs leading to an elevator. As he put his foot on the edge of the first step his feet went out from under him and he fell. He fell backwards and as he did so the mat, which was lying flat on the landing, came after him and "threw . . . [him] down the stairs."

The landing, measured from the door where the decedent entered to the head of the stairs, was approximately four

feet; its width was eight feet. The rubber mat thereon was seven feet long, two and one half feet wide, and three eighths of an inch thick and weighed forty pounds; it was not attached to the floor of the landing but "lay . . . [there] on its own weight." It was perforated and of a type in common use in public buildings. On each step of the stairway, including the step leading off of the landing, there was a ribbed rubber tread thirty-six inches long, nine and five eighths inches wide, and three sixteenths of an inch thick. The tread on the step leading from the landing fitted against the large rubber mat which covered most of the area of the landing.

At the time the decedent left on his errand the defendant's employee Donaldson was engaged in waxing the landing. In doing so he took up the rubber mat and waxed the entire area of the landing, using a liquid wax. He did not notice when he put down the mat after waxing whether or not it moved easily on the waxed surface.

The decedent testified that upon his return from the hospital after the accident he examined the area where he fell; that "it looked as though the place had been waxed"; that "there were ridges going toward the stairway"; and that the wax on the landing "was heavy enough so it made ridges in it." One Abramson, another tenant of the defendant, testified that he also examined the landing on the day of the accident and "found that it was extremely slippery," and that there were marks on the surface of the platform "as though . . . [the] mat had [moved]."

Contrary to the defendant's contention, this case does not depend upon the somewhat technically defined duty of a landlord with respect to the keeping in repair of common passageways. The injury did not result from any want of repair of the landing in question as distinguished from conduct of the defendant's servant in the performance of his work. The plaintiff could recover by proof that the wax was negligently applied on the landing by the defendant, and that this condition caused the decedent to fall. *Bacon* v. *Jaques,* 312 Mass. 371, 373–374. *Peay* v. *Reidy,* 321 Mass.

455, 458, and cases cited.  See *Collins* v. *Goodrich,* 324 Mass. 251, 254.

We are of opinion that a finding of negligence was not warranted.  One is bound to anticipate and provide against what is likely to happen.  *Falk* v. *Finkelman,* 268 Mass. 524, 527.  But one is not bound to foresee and guard against occurrences which are apparently impossible or highly improbable.  *Rogers* v. *Cambridge Taxi Co.* 317 Mass. 578, 580–581.  *Lydon* v. *Warehouse 13, Inc.* 335 Mass. 729, 732. See *Sylvester* v. *Shea,* 280 Mass. 508, 510.  The accident here occurred in most unusual circumstances and was not one that the defendant ought reasonably to have foreseen. There is virtually no dispute as to the type and size of the mat and its position on the landing at the time of the accident.  Moreover, a photograph of the landing and the mat is before us.  The mat is obviously large and heavy and is of a type in common use; it appears to fit flush up against the wall immediately adjacent to the doorway on one side, and against the rubber tread at the top of the stairs on the other side, and lay flat on the floor.  The mat, according to the evidence, had been on the landing for a considerable period prior to the accident.  There was no evidence that the mat had ever slipped before when the landing was waxed.  It is difficult to conceive how a mat of the size, material and weight of that here involved could somehow move from its position, come after the decedent and throw him down the stairs.  But however that may be, it was an occurrence so unlikely as not to be reasonably foreseeable by the defendant.  See *Mulry* v. *Boston Elevated Railway,* 278 Mass. 210, 212.

It follows that the verdict for the defendant was properly entered and that the plaintiff's exceptions are overruled.

*So ordered.*