ORLANDO L. TIBBETTS *vs.* FORD MOTOR COMPANY.

Middlesex.   October 18, 1976. — December 29, 1976.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Negligence,* Automobile wheel cover.

In a negligence action against an automobile manufacturer by one who
injured his fingers when he attempted to pull off a wheel cover by
putting his bare hands through the decorative slots of the cover, the
mere fact that the edges of the slots were rough did not warrant a
finding that the manufacturer was negligent in the inspection and
testing of the cover. [738-742]

TORT.   Writ in the Superior Court dated May 14, 1968.
The action was tried before *Adams,* J.

*Richard L. Neumeier (Philander S. Ratzkoff* with him)
for the defendant.

*Edwin A. McCabe (Edmund C. Case* with him) for the
plaintiff.

ARMSTRONG, J.   The plaintiff recovered a judgment of
$20,000 for injuries to his fingers received when he at-
tempted to remove a wheel cover from a car manufactured
by the defendant (Ford). The judge, partially denying
Ford's motion for a directed verdict, permitted four counts
to go to the jury. On three of the counts, for negligent de-
sign, negligent manufacture, and negligent failure to warn,
the jury found for Ford. The remaining count, on which
the jury found for the plaintiff, was for negligent failure
to inspect and test the wheel cover. The case is here on
Ford's appeal from the judgment on that count.

The injuries were caused in this manner: the plaintiff
was attempting to put snow chains (the mud hook type)
over a tire. He found that he could not pass the chains
through slots in the wheel, as he had been able to do on
his past cars, because the wheel cover extended out to the

tire. Although he knew that the proper way to remove the wheel cover was to pry it off at the edge with a tire iron or similar device, he first attempted to pull off the wheel cover with his bare hand. He put all four fingers into one of six decorative slots in the wheel cover. It was "a tight squeeze," but he did not feel any jagged or rough edges. (The weather was below freezing.) He tugged hard, but the wheel cover did not give. He took his hand out and discovered that he was bleeding profusely from two deep lacerations in his middle and ring fingers. The lacerations had been caused by pressure against the edge of the decorative slot.

The wheel cover had been manufactured for Ford by an independent supplier which by its contract with Ford was required to inspect the wheel covers for jagged edges which "could cause injury during handling." The slots were stamped out by dies which would become worn in regular use and require sharpening at regular intervals. A slot punched out by a worn die would have a burr on its edge. Several of the slots on the wheel cover involved in the present case, which is before us as an exhibit, have such burred edges.

For purposes of this decision we shall assume, without deciding, that, if the burred edges in question constituted a defect, liability for an injury caused by the defect would attach to Ford, whether the negligence were its own or that of its independent supplier. See Restatement (2d): Torts § 400, comment d (1965); *Hamson* v. *Standard Grocery Co.* 328 Mass. 263, 264-265 (1952). We also assume, in the absence of argument on the point, that the jury might properly have found that the lacerations would not have resulted if the plaintiff had applied similar pressure to an edge which did not have a burr. We focus instead on the question whether, as matter of law, burrs on the decorative slots of a wheel cover can properly be found to be a defect in the wheel cover, giving rise to a duty on the part of the manufacturer to use reasonable care to discover and eliminate the defect. Hursh & Bailey, American Law of Products Liability, § 1:7 (2d ed. 1974).

The manufacturer's duty is one of reasonable care, not perfection. "[A] failure to take a special precaution against a danger that is only remotely possible is not negligence." *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 97 (1946). See *Bannister* v. *Berkshire St. Ry.* 301 Mass. 598, 600 (1938); *Rogers* v. *Cambridge Taxi Co.* 317 Mass. 578, 580 (1945); *Marengo* v. *Roy,* 318 Mass. 719 (1945); *Greenfield* v. *Freedman,* 328 Mass. 272, 275 (1952), and cases cited. A corollary is that, in general, a product is not defective simply because it may cause injury to someone using the product in an improper or abnormal manner. *Walker* v. *Benz Kid Co.* 279 Mass. 533, 536 (1932). *Coyne* v. *John S. Tilley Co. Inc.* 368 Mass. 230, 238-239 (1975). Restatement 2d: Torts § 395 (1965). Cf. Restatement 2d: Torts § 402A, comment h (1965).[1]

We recognize that there have been cases in which manufacturers were held liable for negligence even where the injury-causing use of the product was improper or abnormal, because the improper or abnormal use was one that the manufacturer reasonably ought to have foreseen as probable and in the exercise of reasonable care ought to have taken measures to warn of or prevent. See Frumer & Friedman, Products Liability § 15.01 (1976); Hursh & Bailey, American Law of Products Liability § 8.16 (2d ed. 1974). Such cases seem to have involved products which

---

[1] It is hard to conceive of a product which could not cause injury if employed in some improper or abnormal fashion. See, e.g., *McCready* v. *United Iron & Steel Co.* 272 F. 2d 700 (10th Cir. 1959) (window frames used as ladders); *Schneider* v. *Chrysler Motors Corp.* 401 F. 2d 549 (8th Cir. 1968) (eye pressed against sharp edge on car window); *Adduci* v. *Boston Elev. Ry.* 215 Mass. 336 (1913) (passenger stepped on guard rail of car); *Walker* v. *Benz Kid Co.* 279 Mass. 533, 536 (1932) (painter stepped on roof gutter); *Rogers* v. *Cambridge Taxi Co.* 317 Mass. 578 (1945) (passenger sat on open ash tray on taxi arm rest); *Marengo* v. *Roy,* 318 Mass. 719 (1945) (child jumped on top of tar kettle on a dare); *Vincent* v. *Nicholas E. Tsiknas Co. Inc.* 337 Mass. 726 (1958) (injuries due to breakage of bottle being opened improperly); *Nelson* v. *Union Wire Rope Corp.* 39 Ill. App. 2d 73 (1963) (materials hoist used to carry passengers); *Davis* v. *Coats Co.* 255 Iowa 13 (1963) (tire-changing machine used to inflate tire); *Cohagan* v. *Laclede Steel Co.* 317 S.W. 2d 452 (Mo. 1958) (wire binder used to hoist bundle of steel); *Ford Motor Co.* v. *Eads,* 224 Tenn. 473 (1970) (tractor hot-wired to bypass safety device).

were uncommon and apt to confuse the user or products which were inherently dangerous. With respect to such products the manufacturer's broader duty arises from the fact that he is in the best position to dispel confusion in the use of his product or to appreciate and warn against the serious consequences which may flow from a failure to adhere strictly to instructions or limitations in the use of the product.

There is nothing uncommon or inherently dangerous about a slotted wheel cover, a familiar feature on many automobiles. Such a common or straightforward product, if safe for the normal uses reasonably to be anticipated at the time of manufacture, is not defective simply because it is foreseeable that it may cause injury to someone using it improperly. *Leahy* v. *United States Rubber Corp.* 216 F. Supp. 633, 635-636 (D. Mass. 1963). *Adduci* v. *Boston Elev. Ry.* 215 Mass. 336, 337 (1913). *Coyne* v. *John S. Tilley Co. Inc.* 368 Mass. at 238 (1975). Restatement 2d: Torts § 395, comment j (1965). Cf. *Vincent* v. *Nicholas E. Tsiknas Co. Inc.* 337 Mass. 726, 729 (1958).

We have examined the wheel cover in question. See *Rogers* v. *Cambridge Taxi Co.* 317 Mass. at 579-580; *Gauld* v. *John Hancock Mut. Life Ins. Co.* 329 Mass. 724, 727-728 (1953) (with which compare *Coyne* v. *John S. Tilley Co. Inc.* 368 Mass. at 236, fn. 6); *Peacock* v. *Ambassade Realty Corp.* 336 Mass. 115, 118 (1957). It is apparent that one would have to pull one's hand against the inner edge of any of the slots with considerable force and without a glove or other protection in order to break the skin. The edges are not finely finished; the burr is obvious to the touch if not to the eye. But the world is full of rough edges, and the question is whether the jury might properly be permitted to find that a burr such as this, in this location, exposes the user to an unreasonable risk of physical harm. See *Adduci* v. *Boston Elev. Ry.* 215 Mass. 336 (1913); *Bannister* v. *Berkshire St. Ry.* 301 Mass. 598 (1938); *Rogers* v. *Cambridge Taxi Co.* 317 Mass. 578 (1945); *Greenfield* v. *Freedman,* 328 Mass. 272 (1952). Compare *Dreisonstok* v. *Volkswagenwerk, A.G.* 489 F. 2d 1066, 1071-

1075 (4th Cir. 1974). This case does not involve sharp burrs on a surface such as a door handle or interior equipment that is intended to be manipulated. Contrast *Ford Motor Co.* v. *Zahn,* 265 F. 2d 729 (8th Cir. 1959). Nor does this case involve a wheel cover slot with hidden, sharp edges that could seriously injure someone merely inserting his hand, a use not intended for the slots by the manufacturer but which, it could be found, the manufacturer should expect in the course of normal use. Contrast *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593 (1915).

In our opinion, the burr-covered decorative slot must be classed with a great many other common fixtures, projections, surfaces, corners, and edges found in vehicles and elsewhere as a result of which significant injuries are possible but are not reasonably to be anticipated. To hold the defendant liable for having failed to discover and remove the burrs in question would be to establish an unreasonable standard of perfection in manufacture rather than to enforce the recognized standard of due care. *Rogers* v. *Cambridge Taxi Co.* 317 Mass. at 580.

We are therefore of the opinion that the defendant's motion for a directed verdict should have been allowed and do not reach the defendant's alternative contention that the jury should have been instructed on the defense of voluntary assumption of risk.

> *Judgment reversed.*
> *Judgment for the*
> *defendant on count 8.*