Patricia VENEZIA, Individually, and as she is next friend of Louis Venezia, a minor, Plaintiffs, Appellants,

v.

MILLER BREWING COMPANY et al., Defendants, Appellees.

No. 80–1036.

United States Court of Appeals, First Circuit.

Argued May 8, 1980.

Decided July 18, 1980.

William J. Rooney, Jr., Brighton, Mass., with whom Arthur J. McCabe, II, and McCabe & Sidel, Boston, Mass., were on brief, for plaintiffs, appellants.

Thomas E. Peisch, Boston, Mass., with whom Thomas D. Burns and Burns & Levinson, Boston, Mass., were on brief, for Thatcher Glass Manufacturing Corporation, defendant, appellee.

Ronald E. Harding, Boston, Mass., with whom Ralph H. Willard, Jr. and Weston, Patrick, Willard & Redding, Boston, Mass., were on brief, for Foster-Forbes Glass Company, defendant, appellee.

Louis N. Massery, with whom Law Offices of James D. Casey, Boston, Mass., was on brief, for Miller Brewing Co., and Brockway Glass Company, defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and DAVIS,* Judge, U.S. Court of Claims.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff appeals the district court's dismissal, for failure to state a claim, of the complaint filed in this diversity action. *See* Fed.R.Civ.P. 12(b)(6). The complaint charged Miller Brewing Company and three manufacturers of glass products with negligence, gross negligence and breach of warranty in connection with the design and manufacture of a glass bottle used as a container for Miller Beer.[1] The complaint alleged that plaintiff, then eight years of age, was playing with friends near his home when he "found a non-returnable Miller High Life clear glass bottle" which had been "discarded by . . . persons unknown. . . ." During the course of play the "thin walled" bottle, in plaintiff's words, "came in contact with a telephone pole." Plaintiff, in his brief, has clarified this phrase, indicating that he was the party responsible for throwing the bottle against the pole. Following the impact of the glass container with the telephone pole the bottle shattered, and particles of glass entered plaintiff's eye causing severe injury. Plaintiff's basic premise is that Miller and the bottle manufacturers should have been aware of the dangers inherent in their "thin walled" "non-returnable" bottles and should have accordingly designed and marketed a product better able to safely withstand such foreseeable misuse as breakage in the course of improper handling by children.

The district court indicated that it accepted as true all the well-pleaded allegations, *see O'Brien v. DiGrazia*, 544 F.2d 543, 545 (1st Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977), but nonetheless found the complaint deficient. The court concluded that "the defendant could [not] be negligent in any respect, nor, realistically, liable under any theory of warranty on the facts alleged. . . ." We affirm.

Plaintiff's allegation of breach of warranty is based upon Mass. G.L. c. 106 § 2–314, which provides that a merchant impliedly warrants that his goods are, *inter alia*, "fit for the *ordinary* purposes for which such goods are used." (Emphasis added.) The linchpin of the warranty claim (and, as will be seen, the negligence claim also) is thus the proper scope of the term ordinary purpose. While at first blush it might appear beyond dispute that throwing a glass container into a telephone pole is by no means an "ordinary" use of that product, some brief examination of recent authority relied on by plaintiff in support of the contrary view may be helpful in explaining just why the initial impression is, in fact, sound.

---

* Sitting by designation.

1. In light of our present disposition, *see infra*, we need not discuss a further ground advanced by the three bottle manufacturers in support of the district court's granting of their motions to dismiss the plaintiff's complaint: whether the failure of the complaint to specify which, if any, of those defendants designed or produced the specific bottle allegedly causing injury is a fatal defect.

In *Back v. Wickes Corp.*, —— Mass. ——, 378 N.E.2d 964 (1978), the Massachusetts Supreme Judicial Court explored the contours of section 2–314's "ordinary purpose" concept and concluded that the " 'ordinary purposes' contemplated by [that warranty] section include both those uses which the manufacturer intended and those which are reasonably foreseeable." 378 N.E.2d at 969. "It is no more than a play on words," the court concluded, "to charge that goods must be fit for 'ordinary' purposes, but not for 'extraordinary' or 'different' or 'unusual' purposes. Such [language] fails to inform . . . as to whether the defendant has warranted the goods to be free from the propensity that caused the plaintiff's injuries." 378 N.E.2d at 968.

Seizing on these passages and the Supreme Judicial Court's further admonition that a manufacturer must, in designing a product, "anticipate the environment in which [that] product will be used," plaintiff urges that the present defendants might reasonably be found by a jury to have broken a fitness warranty by designing and manufacturing glass bottles unable to safely withstand the arguably foreseeable product abuse that occurred here.

▮ The weakness with plaintiff's contention, however, is that it divorces the language of the *Back* decision from that case's underlying facts. *Back* involved the question of the liability of a manufacturer of motor homes for wrongful death and personal injuries resulting when one of its vehicles exploded and burst into flames following a collision with a cable fence at the side of the highway. Plaintiffs there maintained that the manufacturer's positioning of the motor home's gasoline tank was responsible for making an otherwise minor collision fatal. The court's inquiry in *Back*, similar to that engaged in by other courts in the so-called second collision cases, *see, e. g., Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir. 1974); *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968); *Smith v. Ariens Co.*, 375 Mass. 620, 377 N.E.2d 954 (1978), focused on the question whether the defendant's conscious design choices could be viewed as having rendered the motor home unreasonably dangerous to its users and therefore unfit for highway travel—its intended use. 378 N.E.2d at 970. In answering that question affirmatively and remanding the case for a new trial, we believe the *Back* court held only that a manufacturer's warranty of product fitness for ordinary use includes a guarantee that such product will withstand, in a reasonably safe manner, foreseeable "misuse" incident to or arising out of the product's intended use. *See* W. Prosser, The Law of Torts, § 96, p. 646 (1971). We think it would be stretching too far to believe that the Massachusetts courts are presently prepared to expand their definition of "ordinary purposes" to include the deliberate misuse of an otherwise reasonably safe container in a manner totally unrelated to any normal or intended use of that item. The Massachusetts Supreme Judicial Court previously has found no breach of a warranty of merchantability where a plaintiff was injured by glass breakage sustained in an attempt to pry the cover off a glass baby food jar with a beer-type can opener.[2] *Vincent v. Nicholas E. Tsiknas Co.*, 337 Mass. 726, 151 N.E.2d 263 (1958). *A fortiori*, we can see no possible implied fitness warranty that an empty glass bottle discarded by unknown persons would more safely withstand being intentionally smashed against a solid stationary object. Under Massachusetts law the question of fitness for ordinary purposes is largely one centering around reasonable consumer expectations. *Back, supra*, 378 N.E.2d at 970; *Vincent, supra*, 151 N.E.2d at 265. "The propensity of glass to break under pressure is common knowledge," *Vincent*, 151 N.E.2d at 265. No reasonable consumer would expect anything but that a glass beer bottle, apparently well suited for

---

**2.** While the jar had included directions to open "gently," the court emphasized in reaching its decision that "glass jars are not sold, or bought, in the expectation that they will be subjected to pressures" of the sort as were in fact exerted. 151 N.E.2d at 265. If a glass container has not been warranted to withstand an attempt to open it with an improper opening device, it hardly could be warranted to safely survive impact with a telephone pole.

its immediate intended use, would fail to safely withstand the type of purposeful abuse involved here. In fact, one would suspect that the present eight year old plaintiff knew well the expected result, if not the potential injury, of his conduct. What, if not the possibility of shattering the bottle, would lead him to throw it against the pole in the first place? *Cf. Geary v. H. P. Hood & Sons, Inc.*, 336 Mass. 369, 145 N.E.2d 716, 717 (1957) ("It must be assumed . . . that children at play sometimes throw available objects for various reasons. But almost every object placed in schoolhouses and play yards for school purposes may conceivably inflict serious and regrettable injury when thrown.")

The same considerations which lead us to conclude that the district court properly dismissed the plaintiff's warranty claim indicate that the claims grounded in negligence are likewise fatally deficient. "By and large, the standard of safety of goods is the same under the warranty theory as under the negligence theory. In both actions the plaintiff must show . . . that the goods were unreasonably dangerous . . . for the purpose to which they would ordinarily be put. . . ." 2 Harper and James, The Law of Torts, § 28.22, p. 1584 (1956); *quoted in Schneider v. Chrysler Motors Corp.*, 401 F.2d 549 (8th Cir. 1968); *see Smith v. Ariens Co.*, 375 Mass. 620, 377 N.E.2d 954, 957 (1978) ("Under our cases . . . a manufacturer has [a] duty to design products so that they are reasonably fit for the purposes for which they are intended.")[3]

Plaintiff again, as he did in his warranty argument, attempts to expand the scope of the "intended" use concept by resort to the familiar, and sometimes misleading, rubric of "foreseeability." But reliance on such generality is of limited assistance, for "In a sense, in retrospect almost nothing is unforeseeable." *Green v. Volkswagen of America, Inc*, 485 F.2d 430, 438 (6th Cir. 1973) (*quoting Mieher v. Brown*, 54 Ill.2d 539, 301 N.E.2d 307 (Ill.1973), *see also* Prosser, *supra*, § 43, p. 267–68. One with the time and imagination and aided by hindsight no doubt can conjure up all sorts of arguably "foreseeable" misuses of a variety of otherwise reasonable safe products. We see no evidence that the Massachusetts courts have abandoned their previously expressed view that "a common or straightforward product, if safe for normal uses reasonably to be anticipated at the time of manufacture, is not defective [i. e., unfit for its intended use] simply because it is foreseeable that it may cause injury to someone using it improperly." *Tibbets v. Ford Motor Co.*, 4 Mass.App. 738, 358 N.E.2d 460, 462 (Appeals Ct. 1976). Indeed, the Supreme Judicial Court has recently cited with approval previous decisions of this and other circuit courts which have defined the scope of the concept of "intended use" as encompassing the "probable ancillary consequences of normal use," and the consequences "incident to the normal and expected use" of a particular product.[4] *Turcotte v. Ford Motor Co.*, 494 F.2d 173, 181 (1st

---

**3.** Phrased another way, the question might be whether defendants were under any "duty to protect the plaintiff against the event which did in fact occur." Prosser, *supra*, § 42, p. 244. And although the district court based its dismissal on plaintiff's negligence allegations on its view that "there was no act or omission of the defendant[s] that was the proximate cause of the injury," the question of what is "proximate" and that of duty are "fundamentally the same: whether the interests of the plaintiff are to be protected against the particular invasion by the defendant's conduct." Prosser, *supra*, § 53, p. 326. Thus, whether we treat the problem as one of duty or, as did the district court, one of proximate cause, the same result obtains: the defendants cannot be held liable under a theory of negligent design or manufacture

for injuries resulting from the deliberate misuse of their product in a manner so foreign from any proper use contemplated by them that it cannot, even by broad construction, be forced within the critical concept of "intended" or "ordinary" use.

**4.** We do not agree, as plaintiff urges, that the recent Massachusetts decision in *Bernier v. Boston Edison Co.*, Mass.Adv.Sh. (1980), 947, —— Mass. ——, 403 N.E.2d 391, represents any departure from these views. In *Bernier*, the Supreme Judicial Court upheld a jury verdict finding Boston Edison liable for the negligent design of an electric street light pole which, unable to withstand the impact of an automobile which jumped the curb, fell and seriously injured two pedestrians. Citing *Back v. Wickes*,

Cir. 1974), *cited in Back v. Wickes, supra,* 378 N.E.2d at 969; *Larsen v. General Motors Corp.,* 391 F.2d 495, 502 (8th Cir. 1968), *cited in Smith v. Ariens, supra,* 377 N.E.2d at 957. Certainly the present product misuse falls far outside that definition.

Even under the most expansive theories of products liability, a "manufacturer is not an insurer and cannot be held to a standard of duty of guarding against all possible types of accidents and injuries" in any way causally related to the design and manufacture of its products. *Schneider v. Chrysler Motors Corp.,* 401 F.2d 549, 557 (8th Cir. 1968). The world, as the Massachusetts Appeals Court has noted, is "full of rough edges." *Tibbets, supra,* 358 N.E.2d at 462. Review of the relevant authority convinces us that the Massachusetts courts would not be prepared to hold a manufacturer liable for injuries sustained by an individual coming into contact with such "rough edges" created by his own intentional misuse of an otherwise "fit" product in a manner in no reasonable way related to the immediate intended uses for which the product was designed, manufactured and marketed. As the district court properly observed, the impact of endorsing a contrary conclusion would be overwhelming, with every discarded glass object holding the potential for generating a future lawsuit.[5]

*Affirmed.*

---

—— Mass. ——, 378 N.E.2d 964 (1978), and other "second collision" type cases, the *Bernier* court held that Edison was bound to "anticipate the environment in which its product will be used, and . . . design against the reasonably foreseeable risks attending the product's use in that setting." Mass.Adv.Sh. (1980) at 952, 403 N.E.2d at 395. The court emphasized that "[a]s in the case of vehicles, design should take into account 'foreseeable participation in collisions.'" *Id.* at 953, 403 N.E.2d at 396. We believe that this language and the Supreme Judicial Court's overall decision simply reflect the concepts already discussed above, without materially advancing any new doctrine. The cases cited by the court in support of its holding are among those just noted which define the scope of a product's intended use as encompassing also the incidental consequences of normal use. The so-called "normal use" of an electric lightpole is to stand vigil, so to speak, over the immediately adjoining roadway. We do not think it unreasonable to find, and indeed the evidence in *Bernier* supported the conclusion that as an incident of such normal use, the light pole would be subjected to occasional vehicular impact. This is a far cry from the circumstances presently before us. *Bernier* perhaps would have been of some assistance to the present plaintiff had it involved a light pole situated in the middle of a field, far from any roadway, struck by a teenage automobile joyrider who was himself injured by the falling pole. In such a situation, unlike that as actually occurred in *Bernier,* the harm, though foreseeable in some broad sense, is nonetheless brought about by a product misuse well beyond the ancillary consequences of the product's normal use.

And, in the present case, an additional circumstance further undercuts plaintiff's reliance on *Bernier.* Here, the instrumentality involved had completely fulfilled its normal use and been discarded at the time the injury occurred. *Bernier* might have been somewhat more analogous to the present case had the plaintiff there been injured after he had removed the glass fixture from a discarded light pole and intentionally smashed it into the pavement. As the case actually occurred and was resolved, we think it adds little to plaintiff's position.

5. As Massachusetts law has yet to embrace the theories of liability advanced by the plaintiff in the circumstances presented, we deny plaintiff's motion to certify the question to the Massachusetts Supreme Judicial Court pursuant to SJC Rule 3:21. The certification procedure was not designed so as to allow a party "to seek to persuade the state court to change what appears to be present law." *Cantwell v. University of Massachusetts,* 551 F.2d 879, 880 (1st Cir. 1977). Plaintiff here brought suit in the federal forum, and as we said in *Cantwell,* "one who chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification. We do not look favorably, either on trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court, or on duplicating judicial effort." *Id.*