Tucker, Richard T., J.
This matter came on for juiy-waived trial on December 29, 30, 2008 and January 2, 2009. Both parties presented their evidence pro se.
Testifying at trial were the plaintiff s mother, Patricia Druiy, the plaintiff Steven Druiy, the defendant Scott Druiy, the defendant’s father, Harry Drury and the defendant’s significant other, Victoria Ina Druiy. After consideration of the testimony that I found to be *514 credible and the fifiy-two exhibits admitted into evidence, I find, rule and order as follows:
FINDINGS OF FACT
I find the following facts generally, reserving further detailed findings for the discussion of the issues.
The parties, Steven Roland Druiy (“Steven or plaintiff’), and Scott Darin Druiy (“Scott or defendant”), are cousins, and both now reside as abutting neighbors at 18 Drury Lane (Steven) and 24 Druiy Lane (Scott), Templeton, Massachusetts. While Scott purchased 24 Drury Lane from his father, Harry Druiy, at or about 1987, Steven occupies the premises as a caretaker for his mother, Patricia Druiy, who is the sole owner of the property. Steven principally occupies the premises alone. Although Patricia, Steven’s mother and owner of the property, lives at other premises she does plan on returning to 18 Drury Lane to reside. Scott Druiy lives at the premises with his father and Victoria Ina Druiy who, although not married to Scott, has taken his last name. Scott’s father, Harry Druiy, also owns property across the street from 24 Druiy Lane.
Suffice it to say that on or about the time of the death of Steven’s father William Druiy, and certainly since 2004, a feud of sorts has existed between Steven and Scott. In the pleadings of both parties myriad claims of wrongs and damages are made resulting from the alleged actions of each other.
Steven’s basic claim is that Scott has erected and maintained a “spite fence,” as that term is used in G.L.c. 49, §21 on or about the property line dividing their two properties. This fence, Steven claims, has been erected by the placement of a stone or boulder at or about the line, as well as various vehicles, campers, trailers, other equipment and wooden pallets. It is alleged that all of these items have been placed at or about the property line by Scott to harass, irritate or emotionally disturb Steven. It is claimed by Steven that such actions constitute: (a) a spite fence in violation of G.L.c. 49, §21, and/or (b) a public nuisance for which he seeks an abatement and/or injunction.
The defendant, Scott Druiy, while denying that he has created any nuisance or fence in violation of G.L.c. 49, §21, counterclaims alleging that plaintiff has intentionally or negligently inflicted emotional distress upon him primarily though his use of legal and administrative actions against him. He also claims property damage in the form of damage to the stone or boulder that he has placed at or about the property line between the parties’ properties and the right to prevent and/or enjoin plaintiff from trespassing and his “repeated attempt(s) to squat the land [of] the defendant.” The defendant, Scott Drury, seeks money damages, costs, expenses, lost wages and punitive damages for the actions of the plaintiff.
DISCUSSION AND RULINGS OF LAW
Plaintiffs claim of a spite fence and a private nuisance arises out of the defendant’s actions in parking vehicles (registered and unregistered), campers, trailers, equipment, wooden pallets and the placement of the stone or boulder at or about the property line dividing the parties’ properties. Although there was much testimony about what vehicles or properties were brought to the line as opposed to already being there, the length of time each vehicle or property was in such placement and the identity of the true owner of such property, it is not disputed that the defendant Scott Druiy purposefully brought the stone or boulder from his father’s property and placed it at or about the property line. There is also little dispute that he did recently place pallets and some vehicles at the property line such as a boxed truck and a thirty-eight-foot “level” sitting on tractor trailer rims. Scott unabashedly admitted that he brought such property at or near the dividing line for his own “happiness” and for the “pleasure in enjoying his property." I find that no logical explanation for Scott’s actions other than he has placed said property there for the purpose of, at a veiy minimum, annoying or aggravating the plaintiff with an offensive condition.
General Laws Chapter 49, Section 21 provides that a “spite fence” is “[a] fence or other structure in the nature of a fence which unnecessarily exceeds six feet in height and is maliciously erected or maintained for the purpose of annoying the owners or occupants of enjoining property . . .” The statute states that such a fence “shall be deemed a private nuisance.”
Clearly, the defendant has not erected a fence in the traditional sense. The legislative use of the term “other” clearly contemplates a more expansive prohibition that goes beyond mere “fences . . . constructed of rails, timbers, boards, iron or stone . . .” G.L.c. 49, §2. See Perlena v. Vining Disposal Service, Inc., 47 Mass.App.Ct. 491, 498 (1999) (use of the word “other” operates to broaden scope of terms it modifies).
Despite these indicia that an expansive reading should be given to §21, a spite fence must still be a “structure” under the statutory provisions. While not being defined by the statute or by case law, the dictionary definition of structure is that of “something (as a building) that is constructed,” or “something arranged in a definite pattern of organization.” Webster’s, 9th New Collegiate Dictionary, 1169 (1985). By describing “structure” with words like “building” and “definite,” the definition implies an element of permanency. The phase modifying structure, “in the nature of a fence,” restricts the term further.
In following the lead of Massachusetts in enacting spite fence statutes[1] other states have enacted similar legislation and some of their decisions are illustrative of the scope of what is meant by a “structure in the nature of a fence.” The Rhode Island Supreme Court and a California Appellate Court have held that a row of trees may be considered a fence within the meaning of their spite fence statutes. See Dowdell v. Bloomquist, 847 A.2d 827, 830-31 (R.I. 2004; Wilson v. Handley, *515 119 Cal.Rptr.2d 263, 271, 272 (Cal.Ct.App. 2002); Blair v. 305-313 East Assoc., 123 Misc.2d 612, 614 (N.Y.Sup.Ct. 1983). New York, however, has held that “hedges are not structures” for purposes of New York’s analogous statute. Downe v. Rothman, 215 App.Div.2d 716, 717, 627 N.Y.S.2d 424 (1995).
Although the placement of property in this case might serve as a fence in that it creates a barrier of sorts, it lacks many other characteristics. Evidence produced at trial did not establish the height of the obstructions, thus the statutory requirement of a “structure . . . which unnecessarily exceeds six feet in height” has not been established. Moreover, it is clear that these objects lack the uniform, permanent quality one might expect of a “fence.” Accordingly, I find that plaintiff has not met his burden of proving the existence of a spite fence or a violation of G.L.c. 49, §21.
Plaintiff, however, also alleges that such objects, placed strategically as they are, constitute a private nuisance for which he seeks an abatement or a permanent injunction. See G.L.c. 243, §§1, 5. Even though Steven is not the record owner of 18 Druiy Lane, his status as a family member and permanent resident caretaker of the property for the owner permits him to bring an action for nuisance. United Elec. Light Co. v. Deliso Constr. Co., 315 Mass. 313, 321 (1943) (“anyone who has been injured by a private nuisance is entitled to recover for the damage resulting to him”); Sherman v. Fall River Iron Works Co., 2 Allen 524, 526 (1861) (tenant may maintain action for private nuisance). H. Sacks & Sons, Inc. v. Metropolitan District Commission, 20 Mass.App.Ct. 45, 47 (1985) (tenant may bring nuisance action against the Commonwealth).
Our Supreme Judicial Court has stated that “[a] private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another.” Doe v. New Bedford Housing Authority, 413 Mass. 273, 288 (1994), citing Morash & Sons v. Commonwealth, 363 Mass. 612, 616 (1973); Asiala v. Fitchburg, 24 Mass.App.Ct. 13, 17 (1987); Leary v. Boston, 20 Mass.App.Ct. 605, 609 (1998). Actions of a defendant must be such as to cause an interference to a plaintiff that would “deprive the plaintiff of the exclusive right to enjoy the use of premises free from material disturbance and annoyance.” Hennessy v. Boston, 265 Mass. 559, 561 (1929). The injury or annoyance must have substantially interfered “with the ordinary comfort ... of human existence,” or have been substantially detrimental to the “reasonable use [ ] or value of the property.” Rattigan v. Wile, 445 Mass. 850, 856 (2006), citing Metropoulos v. MacPherson, 241 Mass. 491, 502 (1922). A trier of fact, judge or jury, may find an intentional invasion of another’s interest in the use and enjoyment of property being unreasonable if the “gravity of the harm” caused thereby, “outweighs the utility” of the actor’s conduct. Rattigan v. Wile, 445 Mass. at 856, citing Restatement (Second) of Torts, §826(a). Upon a finding that an actor’s “sole purpose” “is to annoy and harm his neighbor,” a finding of utility can not be made. Rattigan v. Wile, 445 Mass. at 857; Restatement (Second) of Torts, §829(a) & comment. Such actions, lacking utility to the actor are unreasonable as every landowner “is bound to use his own property in such a manner as not to injure the property of another, or the reasonable and proper enjoyment of it.” Rattigan v. Wile, 445 Mass. at 857, quoting Wesson v. Washburn Iron Corp., 95 Mass. 95, 104 (1866).
In this action the defendant Scott has claimed no utility other than his stated “happiness” or “enjoyment of his property” for the placement of the property in issue at or about the dividing line with his cousin’s property. The Court has no difficulty in finding that the property in issue was intentionally placed there by Scott for the purpose of annoying and aggravating the plaintiff.
Having found the lack of utility in the defendant’s actions, it still must be shown that the interference with the plaintiffs use of his property rises to a substantial level since the law of nuisance “does not concern itself with trifles, or seek to remedy all the petty annoyances of every day life in a civilized community.” Rattigan v. Wile, 445 Mass. at 856, citing W.L. Prosser & W.P. Keeton, Torts §88 at 626 (5th Ed. 1984). Testimony was submitted that in addition to Steven’s annoyance and aggravation by the defendant’s actions, an issue of safety existed for the vehicles that normally entered Steven’s property very close to the property line. The plaintiff testified that some of his visitors arriving at his property had not observed the stone or boulder and struck the same with their vehicles. Although such safety issues do not rise to the level of presenting a serious risk of injury to persons or property of the other,[2] said actions can be found to be unreasonable if the harm caused the neighbor is substantial and “it would be practicable for the actor to avoid the harm in whole or in part without undue hardship.” Restatement (Second) of Torts, §830 and comment c.
This Court interprets broadly the right of one to use and enjoy his or her property. It is not necessary that a nuisance “directly damage the land or prevent its use . . .” Rattigan v. Wile, 445 Mass. at 858.1 find that the actions of Scott directly and substantially interfered with the plaintiffs “pleasure, comfort and enjoyment” that plaintiff would normally be expected to derive from the occupancy of this property. See, Restatement (Second) of Torts, §82 ID, comment b. In determining whether the actions of nuisance rose to the level of whether “normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable . . .”[3] Re *516 statement (Second) of Torts, §82 IF, d, the Court notes that the Town of Templeton and a court have taken actions against the defendant Scott for maintaining a commercial activity (manufacturing and sale of pallets) in a residential zone and for having too many unregistered vehicles on his property. Thus, it appears that the defendant’s actions are likely to be regarded as offensive by others in the community. I find that the plaintiff Steven has sustained his burden of proving a private nuisance and is entitled to an abatement and an injunction concerning the same.
Both parties seem to raise in their pleadings that the other has and is trespassing on his property. Plaintiffs proof was insufficient to prove repeated intentional trespasses or encroachment by the defendant. Although many articles of property of Scott are quire near to the line dividing their two properties, none was established as having crossed the line.
Defendant’s claim of trespass and of Steven’s past attempts to “squat” his land were similarly not proven. Scott referred to Steven’s admission of tripping over the stone or boulder as proof that Steven had been on his property. A single instance of inadvertent trespass finds no remedy in the law. Edgerton v. H.P. Welch Co., 321 Mass. 603, 612-13 (1947) (trespass requires an affirmative, voluntary act, not just negligence); Marengo v. Roy, 318 Mass. 719, 721 (1945) (no trespass where contact with land unintended and inadvertent).
Neither plaintiff nor defendant has proven cases of trespass.
Defendant seeks damages for injury to his property, to wit, the stone or boulder placed by him at or about the property line. Defendant alleges that plaintiff “chipped” the stone in some manner that was never established. There was no proof of any monetary loss for this chip which the court was unable to see from the photos admitted. Defendant has not made out a case for property damage.
Lastly defendant claims that Steven’s legal actions against him have been a form of harassment that has caused him emotional distress. In order to recover for intentional infliction of emotional distress, Scott must establish that Stephen’s conduct was “extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized society.” Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 465-66 (1997); Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976). Additionally defendant must establish that the damage (emotional distress) that he suffered as a result of the plaintiffs actions was “severe and of such a nature that no reasonable person could be expected to endure it.” Payton v. Abbott Labs, 386 Mass. 540, 555 (1982). Defendant’s proof on both points was lacking. He may not recover damages for emotional distress.
ORDER OF JUDGMENT
This court finds for the plaintiff and orders judgment for plaintiff in the form of injunctive relief as follows:
The defendant, Scott Darin Drury, is enjoined from unreasonably interfering with the use and enjoyment of the plaintiff, Steven Roland Drury of property located at 18 Drury Lane, Templeton, Massachusetts. Without limiting the scope of the foregoing prohibition, the defendant shall place no object or property, reasonable vegetation excepted, within fifteen (15) feet of the dividing line of the properties located at 18 and 24 Drury Lane, Templeton, Massachusetts. Notwithstanding this prohibition, all actions and placement or storage of any property upon 24 Drury Lane shall be subject to the local rules, regulations and by-laws of the Town of Templeton. This injunction is permanent in nature. Any modification of this injunction shall only be by order of the Superior Court.

Massachusetts enacted one of the earliest spite fence statutes in the United States, see Rideout v. Know, 148 Mass. 368 (1889), citing G.L.c. 348, §1 (1887), from which many states’ modem statutes are likely drawn. Wilson v. Handley, 119 Cal.Rptr.2d 263, 271-72 (Cal.Ct.App. 2002).

Although never described fully at trial, the photo exhibits portray the stone as being approximately 18" x 18" and 12" high.

The Supreme Judicial Court has noted in a case exhibiting similar factual claims, albeit more severe, that “incorporeal, value-based interferences” like diminished aesthetic enjoyment of one’s propeny may suffice as sufficient interference to establish a nuisance. Rattigan v. Wile, 445 Mass. 850 (2006).